BENJAMIN L. BRAUN ET UX. *v.*
FORD MOTOR COMPANY ET AL.

[No. 939, September Term, 1975.]

*Decided September 14, 1976.*

The cause was argued before MOYLAN, POWERS and MOORE, JJ.

*Sidney Kaplan,* with whom was *Arthur Guy Kaplan* on the brief, for appellants.

*Robert E. Powell,* with whom were *M. King Hill, Jr.,* and *Smith, Somerville & Case* on the brief, for appellee Ford

Motor Company. *Stanley B. Rohd*, with whom were *Whiteford, Taylor, Preston, Trimble & Johnston* on the brief, for other appellee.

POWERS, J., delivered the opinion of the Court.

Benjamin L. Braun and Phyllis W. Braun, his wife, filed suit in August 1971 in the Superior Court of Baltimore City against Ford Motor Company and against Tower Ford, Inc., a Baltimore dealer, claiming damages for injuries to Mrs. Braun. They alleged that on 4 October 1968 they had purchased from Tower Ford an automobile manufactured by Ford Motor Company. They also alleged, and the evidence at the trial of the case showed, that on 18 April 1969 Mrs. Braun was driving alone in the automobile in a northerly direction on Walther Boulevard in Baltimore when she lost control, collided with a parked automobile, and sustained injuries. It was alleged, and it was contended at the trial, that Mrs. Braun lost control of the automobile because of a defective part which caused it to accelerate improperly.

In the first count of the declaration Mrs. Braun sued both defendants on the theory of breach of warranty. In the second count she claimed against both upon allegations of negligence. In Counts III and IV, Mr. Braun claimed damages for medical and other expenses attributable to his wife's injuries, and for the loss of her services, upon the same theories of breach of warranty and of negligence.

Demurrers filed by Ford Motor Company to the two breach of warranty counts were sustained and are not involved in this appeal.

Trial was held before Judge James A. Perrott and a jury from the 6th to the 14th of November, 1975. At the conclusion of all of the evidence at the trial, the court granted a motion of Ford Motor Company for a directed verdict in its favor. The case went to the jury as to defendant Tower Ford, for a special verdict in the form of written findings upon issues of fact. Maryland Rule 560. The jury found by its answers that Tower Ford was not guilty of negligence; that Tower Ford breached a warranty to the plaintiffs and that such breach was a proximate cause of the

accident; and that Phyllis W. Braun was guilty of contributory negligence which was a proximate cause of the accident. Because of its finding that Mrs. Braun was guilty of contributory negligence, the jury did not answer the issues relating to damages.

Each member of the jury was polled separately as to each of the three answers. Each agreed that his answers were as announced, and the Clerk hearkened them to their verdict as the court recorded it. The judge then asked: "Therefore Ladies and Gentlemen, you find for the Defendant, is that correct?" The transcript records that the jury answered, "Yes." The docket entry shows each of the answers, and contains these further entries:

> "Verdict in favor of Defendant, Tower Ford, Inc. for costs."
>
> "Judgment on Verdict Nisi."

A motion timely filed by Mr. and Mrs. Braun for a new trial was heard on 6 June 1975 and was denied. On the same day judgment absolute was entered in favor of both defendants for costs. This appeal followed.

The contentions made by the appellants in this Court fall into two separate categories. In the first category, the one upon which appellants principally rely, they pose four questions. Three of them relate to alleged improper conduct by members of the jury in the jury room, and one relates to the qualifications of a juror. In the other category, appellants contend that the trial court erred in granting Ford Motor Company's motion for a directed verdict.

Nowhere in their brief do appellants contend that the trial judge erred or abused his discretion in denying their motion for a new trial. In fact, in response to a motion filed in this Court relating to the adequacy of their record extract, they state:

> "Appellees state the Appellant omitted the transcript of the oral ruling of the Lower Court with reference to their Motion for New Trial. The Appellant is not appealing from the denial of the

Motion for a New Trial, but is instead appealing from improper juror conduct and for this reason omitted argument and decision with reference to the new trial which the Appellant believes is not an appealable issue."

With the exception of a bare statement that the jury's verdict was contrary to the evidence, appellants' motion for new trial was, however, confined exclusively to allegations of improper conduct by members of the jury.

Perhaps the relative functions of appellate courts and trial courts in our system of justice should be more clearly understood. In trial courts, it is the function of the judge to preside over the trial, to direct the course of the proceedings, and to make all rulings on legal questions raised before him at any stage of the case. In a jury trial, the fact finding function is, of course, committed exclusively to the jury, but it remains the duty of the judge to insure that as to all parties concerned the trial is fair, and conducted according to established procedure, to the end that equal justice is afforded to all. Recognizing that judges, being human, may err, the system provides a right of appeal, so that any party who feels he has suffered an injustice flowing from an error by a trial judge, may have the question reconsidered by other judges.

We know of no principle or practice under which a judgment of a trial court may be reversed or modified on appeal except for prejudicial error committed by the trial judge. It is a misuse of language to label as error any act or failure to act by a party, an attorney, a witness, a juror, or by anyone else other than the judge. In other words, error in a trial court may be committed only by a judge, and only when he rules, or, in rare instances, fails to rule, on a question raised before him in the course of a trial, or in pre-trial or post-trial proceedings. Appellate courts look only to the rulings made by a trial judge, or to his failure to act when action was required, to find reversible error.

This philosophy finds expression throughout the appellate process and specifically in Maryland Rules 885 and 1085, which provide that the appellate courts will not ordinarily

decide any point or question which does not plainly appear by the record to have been tried and decided by the lower court, and further by the judicially expressed rule that the appellate court will consider only contentions raised and argued in the briefs. See *Fidelity & Deposit Co. v. Mattingly Lumber Co.*, 176 Md. 217, 4 A. 2d 447 (1939); *Harmon v. State Roads Comm.*, 242 Md. 24, 217 A. 2d 513 (1966); *Ricker v. Abrams*, 263 Md. 509, 283 A. 2d 583 (1971).

One more comment is appropriate. An appeal may be taken, ordinarily, only from a final judgment [1] of a trial court. Code, Courts Art. § 12-301. Orders, rulings, even verdicts, do no harm to a litigant unless they lead up to a final judgment which does him harm. So it is on *appeal from the final judgment* that appellant has the opportunity to show that the judgment resulted from error by the judge in the trial court.

Appellee Tower Ford, Inc. correctly, we believe, states the question presented as, "Did the court err in refusing to grant a new trial on the grounds of jury misconduct during deliberations?" Accordingly, and because we could not properly entertain the question any other way, we will consider the arguments of the appellants with respect to alleged improper conduct by the jury as a contention that the final judgment was wrong because the trial judge abused his discretion in denying their motion for a new trial.

We shall not analyze or discuss in detail the factual basis for the contention that there was improper conduct by the members of the jury. A brief statement will suffice. During the evening after the jury returned its verdict, counsel for appellants telephoned several of the jurors at their homes. He talked with five of the jurors about the case and its result. He reported to Judge Perrott the next morning that he had developed information which he felt showed misconduct. In the presence of counsel for appellants and of counsel for appellee Tower Ford, Judge Perrott questioned each of six jurors, separately, and gave counsel an

---

1. An appeal before final judgment is permitted from certain interlocutory orders, in criminal as well as in civil cases. Some of them are set out in Code, Courts Art. § 12-303.

opportunity to question them. The entire proceeding was transcribed.

The first point developed was that one of the jurors, who had worked in a doctor's office, had in her pocketbook in the jury room a clipping of a newspaper article reporting a recent seminar discussion in Detroit on the subject of emotional stresses of women during menopause, and their symptoms. A few of the other jurors saw the article, or heard it discussed, while they were in the jury room.

Appellants argue that this was improper, because of the nature of the injuries claimed by Mrs. Braun. Except for relatively minor physical injuries for which Mrs. Braun received first aid and brief follow-up care, the injury claimed to have been caused by the accident was described as a severe personality disorder, or neurosis. The only medical witness was a psychiatrist, whom she saw twice; the first time on 18 March 1972, almost three years after the accident, and the second time in October 1974, shortly before the trial. The doctor said that he or his associates saw Mrs. Braun a total of seven times, and rendered psychiatric out-patient care. He said that they were not very successful.

The contention is that the similarity between the emotional symptoms of some women in menopause, and the symptoms described by Mrs. Braun, and by her psychiatrist and by her family, impaired the credibility of her evidence.

The second point brought out in the questioning of the jurors was that one of them was the widow of a judge of the District Court of Maryland. One juror said that she felt that the judge's widow knew the rudiments of court procedure, and "would know whether we were doing right or wrong, not as far as the case was concerned, but our own conduct here * * * ." Another said that "one of the jurors said that they [sic] were quite up on the law." He thought that the Brauns "should get some adjustment", and said that he was told that they would. Another said she had the impression that there would be some compensation. Another said, "The way we voted I didn't really know that we were voting for the defendant."

A final contention related to misconduct was that the

judge's widow had not disclosed that she was acquainted with a member of the same law firm of which trial counsel for Ford Motor Company was also a member. We have examined the eight page transcript of the voir dire examination of the jury panel. There was no question which called for the disclosure of such an acquaintanceship.

At the argument on the new trial motion Judge Perrott correctly pointed out the law relating to impeachment of verdicts, and observed that the issue was resolved when the jury found that Mrs. Braun was contributorily negligent,[2] but went further than he was required to do, and considered the merits of the contentions. He said, "I therefore find totally no basis whatsoever, on the ground of prejudice or any other basis, to grant a new trial here." He denied the motion.

We agree with Judge Perrott's denial of the motion for a new trial, and hold that he did not abuse his discretion in that ruling. His consideration of the post-verdict statements by the jurors should not, however, be taken to indicate a change in the long prevailing rule against impeachment of verdicts.

An exhaustive discussion of the rule that a juror will not be heard to impeach his verdict is found in the opinion written by Chief Judge Sobeloff for the Court of Appeals in *Williams v. State*, 204 Md. 55, 102 A. 2d 714 (1954). The Court said, at 67-68:

> "The law in Maryland is well settled that a juror cannot be heard to impeach his verdict, whether the jury conduct objected to be misbehavior or mistake. *Browne v. Browne*, 22 Md. 103, 113. The reasons for the rule have been stated by this Court in *Brinsfield v. Howeth*, 110 Md. 520, 530, in these impressive words: 'Such evidence is forbidden by public policy,

---

2. All concerned appear to have accepted without question that contributory negligence by a plaintiff bars recovery against a defendant for breach of warranty, as it bars recovery for primary negligence. It appears that the Court of Appeals would so hold. Erdman v. Johnson Brothers, 260 Md. 190, 197-203, 271 A. 2d 744 (1970). The question was not raised here, and we have not considered it.

since it would disclose the secrets of the jury room and afford an opportunity for fraud and perjury. It would open such a door for tampering with weak and indiscreet men that it would render all verdicts insecure; and, therefore, the law has wisely guarded against all such testimony and has considered it unworthy of notice. It would be a most pernicious practice, and in its consequences dangerous to this much valued mode of trial, to permit a verdict, openly and solemnly declared in the Court, to be subverted by going behind it and inquiring into the secrets of the jury room.'

"Other risks sought to be averted, it has been said, are harassment of jurors by disgruntled losing parties; removal of an element of finality from judicial decisions; and through allowing jurors to swear to alleged examples of reprehensible conduct, a decrease in public confidence in the judicial process. In an offer to prove facts nullifying the verdict on a motion for a new trial, the theory for exclusion of the jurors' deliberations during re- tirement, their expressions, argumented, motives, and beliefs, may, according to Prof. Wigmore, embrace both the Privileged Communications Rule and the Parol Evidence Rule. 8 *Wigmore, Evidence*, Secs. 2346, 2348."

The Court in *Williams* felt it desirable to quote at length from an expression by the Supreme Court of the United States of the public policy upon which the rule is based. We quote further from *Williams*, at 69-70:

"The latest Supreme Court decision dealing with the problem, *McDonald v. Pless*, 238 U. S. 264, seems, in language at least, to tend towards return to the stricter rule of exclusion formulated by Lord Mansfield. The defendant moved for a new trial on the ground that a verdict was reached by the jurors' agreeing to a 'quotient verdict.' In upholding the exclusion of the jurors' testimony, the Supreme

Court expounded the reasons. 'The rule,' Justice Lamar said, 'is based upon controlling considerations of a public policy which in these cases chooses the lesser of two evils. When the affidavit of a juror, as to the misconduct of himself or the other members of the jury, is made the basis of a motion for a new trial the court must choose between redressing the injury of the private litigant and inflicting the public injury which would result if jurors were permitted to testify as to what had happened in the jury room. These two conflicting considerations are illustrated in the present case. If the facts were as stated in the affidavit, the jury adopted an arbitrary and unjust method in arriving at their verdict, and the defendant ought to have had relief, if the facts could have been proved by witnesses who were competent to testify in a proceeding to set aside the verdict. But let it once be established that verdicts solemnly made and publicly returned into court can be attacked and set aside on the testimony of those who took part in their publication and all verdicts could be, and many would be, followed by an inquiry in the hope of discovering something which might invalidate the finding. Jurors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict. If evidence thus secured could be thus used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation — to the destruction of all frankness and freedom of discussion and conference.' (at 267)"

In *Williams* the Court of Appeals summarized, at 70:

"We have been referred to no case, and careful independent research has disclosed none, where a verdict was set aside on appeal in any jurisdiction,

because of fallacious, unfair or biased arguments advanced by jurors to one another in their deliberations.

"In Maryland there has been no deviation from the rule that what takes place in the jury-room ought to be, as it generally is, known only to the jurors themselves and that their testimony cannot in general be heard to impeach their verdict, whether the conduct objected to be misbehavior or mistake."

And at 72 the Court said:

"It suffices to say that under the Maryland law the affidavit of a juror is inadmissible as evidence at the hearing on the motion for a new trial, and there is no sound basis for a distinction between civil and criminal cases in this regard."

In *Dixon v. State*, 27 Md. App. 443, 340 A. 2d 396 (1975), a criminal case, Judge (now Chief Judge) Gilbert, writing for this Court, reviewed the authorities, including *Williams v. State, supra*, and held, with respect to a post-trial affidavit obtained from a juror, that the trial judge "did not abuse his discretion in refusing to consider the affidavit, nor in declining to hear testimony relative thereto." At 449.

### The Directed Verdict For Ford Motor Company

The appeal from the judgment in favor of Ford Motor Company merits little discussion. The contention was that the racing of the automobile was attributable to a defective dash pot, a part associated with the carburetor, designed to allow the throttle to return slowly to idle position, to prevent stalling on sudden stops. The only mechanical expert, a witness called by the Brauns, explained the function of a dash pot. He had worked on their automobile. He had attempted, unsuccessfully, to find the reason for its racing. He found no defect in the dash pot, but he said he replaced it, and the engine did not race any more.

Mr. Shaw, the mechanical expert, was not asked whether he could arrive at any opinion about the dash pot from the fact that the engine did not race after he installed a different dash pot. He expressed none. In fact, he reaffirmed a previously expressed opinion that the dash pot "had nothing to do with this accident."

Manifestly, a court should not permit "[jurors] to rush in where [experts] fear to tread." As the Court of Appeals said in approving a directed verdict below in *Woolley v. Uebelhor*, 239 Md. 318, 211 A. 2d 302 (1965), at 325:

"There was no testimony rising above possibility or speculation that at the time Chrysler sent the car from its plant it knew or should have realized that it was dangerous or potentially dangerous inherently, and hence there was no basis on which a jury could have found it negligent."

Judge Perrott correctly directed the verdict for Ford Motor Company.

*Judgments affirmed.*
*Appellants to pay costs, except as provided in our order of 14 January 1976.*