784 A.2d 652

**Deante STUCKEY**

v.

**STATE of Maryland.**

**No. 2909, Sept. Term, 2000.**

Court of Special Appeals of Maryland.

Nov. 5, 2001.

144

Arthur A. DeLano, Jr., Assistant Public Defender (Stephen E. Harris, Public Defender on the brief), Baltimore, for appellant.

Steven L. Holcomb, Assistant Attorney General (J. Joseph Curran, Attorney General, Baltimore, and Sandra A. O'Connor, State's Attorney for Baltimore County, Towson, on the brief) for appellee.

Argued before DAVIS, SONNER, KARWACKI, ROBERT L. retired, specially assigned, JJ.

DAVIS, Judge.

We are principally presented, upon this appeal, with the question of whether to overturn two manslaughter convictions which were the consequence of the reckless and wanton conduct of appellant Deante Stuckey. At the conclusion of a bench trial, the Circuit Court for Baltimore County found appellant not guilty of negligent driving and reckless driving and guilty of, inter alia, two counts of manslaughter by automobile, possession of cocaine with intent to distribute, and possession of marijuana with intent to distribute.[1] Appellant

---

1. The following is a list of the offenses with which appellant was charged and the respective dispositions:

| Count | Offense |
|-------|---------|
| 1 | Unlawful manufacturing, distribution, etc. of a controlled dangerous substance—Guilty |
| 2 | Unlawful possession of a controlled dangerous substance—Merged into Count 1 |
| 3 | Unlawful manufacturing, distribution, etc. of a controlled dangerous substance-Guilty |
| 4 | Unlawful possession of a controlled dangerous substance—Merged into Count 3 |

was sentenced to the jurisdiction of the Commissioner of Correction for two consecutive ten year terms for manslaughter by automobile, concurrent terms of twenty years and five years for possession with intent to distribute cocaine and possession with intent to distribute marijuana, respectively, the sentences for possession of narcotics to run consecutive to one ten year term for manslaughter.

On this appeal, appellant asks us whether the trial court erred when it found him guilty of two counts of manslaughter by automobile after having found him not guilty of reckless driving and negligent driving. Appellant also challenges the sufficiency of the evidence to sustain his convictions for possession of cocaine with intent to distribute, possession of marijuana with intent to distribute, and manslaughter by automobile.

We conclude that the court's acquittal of appellant on the reckless driving and negligent driving charges precludes a finding of guilt on the two counts of manslaughter by automobile and hence we are constrained to overturn the manslaughter convictions, obviating the need to consider the sufficiency of the evidence to sustain the manslaughter convictions. We affirm appellant's convictions for possession of cocaine with

---

| | |
|---|---|
| 5 | Manslaughter by automobile—Guilty |
| 6 | Manslaughter by automobile—Guilty |
| 7 | Theft—Not guilty |
| 8 | Unlawful taking of a motor vehicle—Not guilty |
| 9 | Unauthorized use (livestock, motor vehicle)—Not guilty |
| 10 | Unauthorized use of a rented vehicle—Not guilty |
| 11 | Failure to remain at scene of accident—Guilty with no penalty |
| 12 | Failure to return/remain at scene of accident—Not guilty |
| 13 | Failure to remain at scene of accident—Merged into Count 11 |
| 14 | Driver failed to render assistance in accident—Guilty with no penalty |
| 15 | Driver in accident failed to report to police—Guilty with no penalty |
| 16 | Attempt to elude police fleeing on foot—Guilty with no penalty |
| 17 | Attempt to elude police/failing to stop—Guilty with no penalty |
| 18 | Driver attempted to elude officer by foot—Guilty with no penalty |
| 19 | Driving vehicle in excess speed on highway—Merged into Count 20 |
| 20 | Failure to control speed to avoid collision—Guilty with no penalty |
| 21 | Reckless driving—Not guilty |
| 22 | Negligent driving—Not guilty |
| 23 | Driving without a license—Acquitted |

intent to distribute and possession of marijuana with intent to distribute.

## FACTUAL BACKGROUND

On February 21, 2000, at approximately 9:00 p.m., a car driven by Irving Edlow and a car driven by appellant collided near the intersection of Smith Avenue and Maurlene Road in Baltimore County, Maryland. Edlow was killed in the accident, but his two passengers—wife, Joan, and friend, Molly Bleakman—survived. In the vehicle driven by appellant, passenger Dawn Johnson was killed, while appellant and passengers Damien Green and Tania Wise survived. Recovered from the car driven by appellant after the accident were fifty glass vials of crack cocaine and fifteen small packets of marijuana from under the "front left driver's seat on the floorboard"; a bag containing crack cocaine was found on the driver's seat.

Appellant was charged in a twenty-three count indictment with two counts of manslaughter by automobile, possession of cocaine with intent to distribute, possession of marijuana with intent to distribute, negligent driving, reckless driving, and related offenses.

Several witnesses described the events leading up to the collision. Baltimore County Police Officer Kevin Jones testified that, when he attempted to stop appellant who was driving a white Oldsmobile Intrigue in the 5800 block of Park Heights Avenue, appellant took off "at a high rate of speed." Officer Jones and an officer in a police cruiser gave chase.

Wise and Green were in the vehicle with appellant when appellant was stopped by the police. Wise testified that, when she saw a police officer behind the car, appellant "put his feet [sic] on the gas and took off" and continued to "ride the car faster, faster." Wise further testified, on direct examination, that she estimated the speed of their vehicle to be at least eighty miles per hour. Appellant changed lanes and he passed more than one dozen cars during the chase.

According to Green, appellant "was going kind of fast," as he eluded police. Despite Green's admonitions to slow down more than once, "[b]ecause [appellant] was driving fast," appellant continued to speed. While standing near the corner of Smith Avenue and Seven Mile Lane smoking a cigarette, Batina Davis observed appellant's vehicle traveling at "a high rate of speed." Davis estimated the car's speed in excess of seventy miles per hour.

Another witness, Howard Blaecman, was driving his car on Smith Avenue at the time of the chase and watched appellant's car pass him; he recalled turning to his passenger and commenting, "man, that is fast." Approximately five minutes after appellant's car passed him during the chase, Blaecman saw the same white car again at the scene of the accident.

The car that appellant was driving struck Edlow's car as Edlow was making a U-turn at the intersection of Maurlene Road and Smith Avenue. Joan Edlow testified that she did not see any cars coming as they were making the U-turn. After the collision, Wise and appellant kicked out the windshield and fled from the scene. Wise was apprehended by Officer Jones a short distance from the scene. Appellant was not apprehended until sometime later.

Baltimore County Police Officer William Pumphrey, who was qualified as an expert in traffic accident reconstruction, examined the scene and the vehicle driven by appellant. The posted speed limit on Smith Avenue, according to Officer Pumphrey, was thirty miles per hour. Unable to accurately determine the speed of either car at the time of impact, he stated that appellant had been "[g]oing at a high rate of speed." Inspection of the car driven by appellant revealed the baggie containing fifty vials of crack cocaine and fifteen small packets of marijuana on the floorboard under the driver's seat. A baggie containing crack cocaine was also found on the driver's seat.

Appellant was driving a rental car from Avis Rent–A–Car (Avis) at Baltimore–Washington International Airport. The car had been rented by Robert Hall and Howard Steptoe on

February 11, 2000. Steptoe testified that, when Hall paid for the rental, he saw Hall give the keys to appellant. Thereafter, Steptoe saw appellant on at least two occasions with the car—once driving it and once standing next to it, with no one inside.

David Evans, an employee with Avis, testified that it is normal procedure that every car turned in and prepared for rental is a "quick turn around ... [in which] the car is ... regased, tires checked, fluids checked, vacuumed, windows cleaned, ashtrays emptied, all trash and everything is removed from the car." Evans further testified that the procedure includes inspection of the trunk, glove compartment, and the console area underneath the seats to reveal any property that may have been left by the previous renter. There was nothing to indicate that the procedure was not followed with the car Hall and Steptoe rented.

At the conclusion of the presentation of evidence, the trial court found appellant not guilty of the charges of reckless driving and negligent driving and guilty of the charges of possession of cocaine with intent to distribute and possession of marijuana with intent to distribute. Also, based on appellant's recklessness, speed, and pre- and post-impact conduct, the trial court found appellant guilty of two counts of manslaughter by automobile. Additional facts will be supplied as needed in our analysis.

## LEGAL ANALYSIS

### I

Relying on the fact that the trial court found appellant not guilty of reckless driving and not guilty of negligent driving, then finding appellant guilty of two counts of manslaughter by automobile shortly thereafter, appellant assigns error to the court's finding of guilt as to manslaughter because

[t]hese guilty verdicts cannot stand. Once the court had found [a]ppellant not guilty of negligent driving and not guilty of reckless driving, the court was precluded under: (1) Maryland common law; (2) Maryland common law dou-

ble jeopardy principles; and (3) the Fifth Amendment double jeopardy principles, from finding [a]ppellant guilty of manslaughter by automobile.

Citing *Shell v. State,* 307 Md. 46, 54, 512 A.2d 358 (1986), he further posits that "inconsistent verdicts by a court in a criminal case are not ordinarily permitted as a matter of Maryland common law." He reminds us, citing *Ford v. State,* 274 Md. 546, 553, 337 A.2d 81 (1975), that, by contrast, inconsistent verdicts by juries in criminal cases are generally tolerated. Ultimately, or possibly as a backstop position, relying on *Ferrell v. State,* 318 Md. 235, 567 A.2d 937 (1990), double jeopardy's sibling, collateral estoppel, is offered as a bar to his two manslaughter convictions.

Of the multi-faceted assail on his manslaughter convictions, the *Blockburger*[2] test [or what has come to be known as the "required evidence" test variety of double jeopardy] appears to be the touchstone of appellant's argument. Procedurally, relief from a subsequent prosecution would be via the doctrine of *autrefois acquit,* normally interposed by way of a plea. Seizing upon our seemingly unconditional language that "appellant failed utterly to raise this issue [the double jeopardy claim] at the trial *now under review* and nothing is, therefore, preserved for appellate review," in *Howell v. State,* 56 Md. App. 675, 678, 468 A.2d 688, *cert. denied,* 299 Md. 426, 474 A.2d 218 (1984), *cert. denied,* 469 U.S. 1039, 105 S.Ct. 520, 83 L.Ed.2d 408 (1984), the State's principal argument is that the double jeopardy claim is not preserved.

In deciding whether there is merit to appellant's claim that his manslaughter convictions are barred by the findings of not guilty of negligent driving and reckless driving, we must first determine which, if any, of the theories advanced by appellant pertain to the case at hand. Not suggested by either party is what may in actuality have happened, to wit: the unfortunate findings and their sequence were simply a slip of the judicial

---

**2.** *Blockburger v. U.S.,* 284 U.S. 299, 302, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

tongue by an accomplished and experienced trial judge attempting to wade through a sea of charges against appellant. Of note, in responding to appellant's claim that his convictions for manslaughter are precluded by not guilty findings of the lesser included charges, the State puts virtually all of its proverbial "eggs in one basket," i .e., that the issue is not preserved. The State does make a valiant effort, much as an afterthought, that, "although the court below found that [appellant's] conduct did not meet the sufficiency of the two statutory offenses under the Transportation article, . . . there is no doubt the evidence was sufficient for manslaughter by automobile." That argument is supported only by the court's finding that appellant's speeding at seventy or eighty miles per hour and his failure to keep a lookout for other vehicles constituted "wanton and reckless disregard." Thus, the State, in essence, argues that, notwithstanding the court's finding that appellant was not guilty of negligent driving or reckless driving, the findings of guilt of excessive speed and failing to keep a proper lookout for other vehicles provided independent support for appellant's manslaughter convictions. For the reasons set forth, *infra*, we reject the State's "independent" evidentiary predicate for appellant's convictions for manslaughter.

## II

Having set forth appellant's several related theories, the precise language the trial court employed in entering its findings of not guilty and guilty of the charges before it and the sequence of those findings is essential to which of the theories, if any, are applicable and whether there is merit to the State's assertion that appellant's challenge to his manslaughter convictions was not preserved. In finding appellant not guilty of reckless driving and not guilty of negligent driving, the court said:

THE COURT: Reckless driving and negligent driving.

[PROSECUTOR]: Your Honor, for all the reasons I outlined in my argument for automobile manslaughter, in my

opinion, I would ask the [c]ourt to find obviously there is negligence, but there is a lot more than that.

It is not only reckless, this goes beyond—

THE COURT: *But the only thing is speed. You got to have merger. Not guilty as to both.*

All right. Let me tell you where I am. Anybody want to hear—here is what I'm going to do. I have found him not guilty of 7, not guilty of 8, not guilty of 9, not guilty of 10, guilty of 11, not guilty of 12, 13 merges into 11, guilty of 14, guilty of 15, guilty of 16, guilty of 17, guilty of 18, 19 merges into 20, 20 is failure to control speed, guilty, 21 [reckless driving] is not guilty, 22 [negligent driving] is not guilty, and 23 was not guilty.

Immediately thereafter, the court found appellant guilty of the first count of possession with intent to distribute cocaine and the third count of possession with intent to distribute marijuana and merged the second and fourth counts of simple possession of cocaine and marijuana, respectively, into the convictions for possession with intent to distribute. In finding appellant guilty of manslaughter by automobile, the court opined:

With regard to manslaughter by automobile, I'm convinced that he is guilty beyond a reasonable doubt as to both. The individuals who testified that he was speeding, I believe their testimony. I believe that although not as definitive as some people with a stopwatch would be able to offer, that 70 or 80 as testified to was the speed that this gentleman was going.

With regard to whether it constitutes reckless and wanton conduct, I find that it does. He failed to maintain a proper lookout. He was going so fast he did not see the Camry. I believe the people—the lady when she says to me I was there, I looked, I saw, and it was safe to make that turn. He was going so fast to get away from the police at that particular point that he didn't care. He did not maintain a proper lookout. He was definitely doing excessive speed under the circumstances.

I believe the witnesses who testified to that, he thought that out. He flew from the scene. He didn't care about anyone else but himself, responsibility, not getting caught. Anybody else was absolutely of no importance to him.

Nature and force of the impact indicates to me that he was going very fast. He caused the accident, not anyone else. His speed, his intent on full speed ahead, let's get away from these police, the nature and injuries and damage to the vehicle involved is another factor which comes into my determination.

The nature of the neighborhood and the environment where the accident took place. It is not school time at 2:30 in the afternoon, but it is a residential neighborhood that indicates to anyone that you do not go that fast.

His pre[-] and post[-]impact conduct. Pre meaning a police car is pulling up next to me, I know I'm doing things wrong; let us floor it, something that bodes against him, plus his post[-]impact conduct in getting out and running away and saying the devil with anyone else.

I find those factors do exist and they convince me that this is wanton and reckless disregard.

That car at this [appellant's] hands was an absolute engine of destruction at that particular time, waiting for an accident to come because he was trying to get away from the police, he had drugs in the car, something else is going on. Whatever it is that he was trying to get away, he pushed them down, pushed it to the point that he was speeding as fast as he could possibly. He was an absolute engine of destruction at that particular point and unfortunately two people are dead as a result of that.

I accept the testimony that the impact caused by him was the nexus of the death of both of these individuals.

I do know what you said about Mr. Green did not remember much as far as speed. I find Mr. Green has a very selective memory, just enough to get him off his own case but he is not going to go to anything else. Guilty of 5 and 6.

Our task, before addressing the State's non-preservation argument, simply put, is to determine what are the legal consequences which flow from the court's not guilty verdicts. Because there could be no plea in bar prior to trial and the theories argued on appeal were not presented below, we must decide whether appellant's manslaughter convictions are precluded under Maryland common law double jeopardy principles, Fifth Amendment double jeopardy principles under the U.S. Constitution, inconsistent verdicts by a court in criminal cases under Maryland common law, or collateral estoppel under decisional authority. *See Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970).

### Inconsistent Verdicts

Inconsistent verdicts in a jury trial [3] are generally tolerated under Maryland law. *See Shell,* 307 Md. at 54, 512 A.2d 358; *Ford,* 274 Md. at 553, 337 A.2d 81; *see also Johnson v. State,* 238 Md. 528, 541–42, 209 A.2d 765 (1965)(holding that inconsistent verdicts may stand because, while the verdicts are perhaps the result of compromise or mistake, there should be no speculation into such matters). Inconsistent verdicts by a

---

3. In a recent decision issued by this Court discussing inconsistent verdicts in the context of a jury trial, we said:

 The State suggests that defense counsel's failure to object to the court's instructions or to request an instruction on consistent verdicts precludes Beharry from complaining on appeal about the inconsistent verdicts. *See* Md. Rule 4-325(e). We do not agree. As we explained in *Jenkins v. State,* 59 Md.App. 612, 620–21, 477 A.2d 791 (1984), *modified on other grounds,* 307 Md. 501, 515 A.2d 465 (1986) (regarding whether guilty verdicts of assault with intent to murder and assault with intent to maim were inconsistent):
 Ordinarily, a defendant's failure to make a timely objection to the court's instructions, or to its omission to give an instruction, precludes appellate review of any error relating to the instructions. . . . Where the error arises from the rendition of inconsistent verdicts, however, although it could have been avoided by appropriate instruction, it extends beyond the matter of instructions.
 . . .
 We further explained in *Jenkins* that, *when real prejudice is shown, we will review on appeal an argument that verdicts were fatally inconsistent even if the defendant failed to make the argument below. . . . Bates and Beharry v. State,* 127 Md.App. 678, 699–700, 736 A.2d 407 (1999) (emphasis added).

trial judge, however, are not tolerated. *See United States v. Maybury*, 274 F.2d 899, 903–05 (2d Cir.1960); *see also Shell*, 307 Md. at 55–58, 512 A.2d 358 (stating that *Ford* does not justify inconsistent verdicts from a trial judge and discussing *Johnson, supra*, with approval); *Johnson*, 238 Md. at 543–45, 209 A.2d 765 (discussing *Maybury* with approval).

In *Shell*, the appellant argued that he should not have been convicted by the trial judge of use of a handgun in the commission of a felony or crime of violence after the trial judge had acquitted him of the predicate felonies or crimes of violence—attempted first degree and second degree murder. We affirmed the trial court's decision. The Court of Appeals granted appellant's petition for a *writ of certiorari* and considered whether acquittal of the predicate felony or crime of violence required acquittal of the charge of use of a handgun in the commission of the felony or crime of violence; the Court reversed the appellant's conviction of the handgun offense. In holding that the verdicts were inconsistent at trial, the Court opined that

> commission of a felony or crime of violence is an essential ingredient of the ... handgun offense. It is an element of the crime. If the jury determines that the accused did not commit a felony or crime of violence but is guilty of use of a handgun in the commission of such felony or crime of violence, the jury has obviously rendered inconsistent verdicts.

*Id.* at 53, 512 A.2d 358. The inconsistency resulted when the trial court acquitted appellant of the predicate felony, which was an element of the crime for which he was subsequently convicted.

> In *Johnson*, the Court of Appeals, quoting *Maybury*, held: There is no need to permit inconsistency in the disposition of various counts so that the judge may reach unanimity with himself; on the contrary, he should be forbidden this easy method for resolving doubts.... We do not believe we would enhance respect for law or for the courts by recognizing for a judge the same right to indulge in "vagaries" in the

disposition of criminal charges that, for historic reasons, has been granted the jury. . . . We reverse for inconsistency . . . because we can have no confidence in a judgment convicting Maybury of one crime when the judge, by his acquittal of another, appears to have rejected the only evidence that would support the conviction here.

*Johnson,* 238 Md. at 543, 209 A.2d 765 (quoting *Maybury,* 274 F.2d at 903, 905).

In *Shell,* the Court of Appeals relied on *Maybury* and its own decision in *Johnson,* holding that

it would be the height of appellate inconsistency for us to depart from the principles of *Johnson* and *Maybury* and hold that inconsistent verdicts in non[-]jury trials will generally be permitted and will be sustained in the present case.

*Shell,* 307 Md. at 57, 512 A.2d 358. Based on the above, pellucidly inconsistent verdicts by a trial judge, under Maryland law, cannot stand.

In the case at bar, appellant was acquitted of negligent driving and reckless driving but was convicted of manslaughter by automobile, pursuant to Md.Code (1996 Repl.Vol., 1999 Supp.), art. 27, § 388:

Every person causing the death of another as the result of the driving, operation or control of an automobile, motor vehicle, locomotive, engine, car, streetcar, train, vessel, or other vehicle in a *grossly negligent manner,* shall be guilty of a felony to be known as "manslaughter by automobile, motor vehicle, locomotive, engine, car, streetcar, train, vessel, or other vehicle," and the person so convicted shall be sentenced to jail or the house of correction for not more than 10 years, or be fined not more than $5,000 or be both fined and imprisoned.

Pursuant to § 388, *"grossly negligent"* operation of a motor vehicle is clearly an element of the crime of manslaughter by automobile. By its terms, *grossly negligent* driving involves a higher degree of negligence than does *mere negligent* driving. Therefore, one convicted of a crime of which *grossly negligent*

driving was an element, he or she would also be guilty of *negligent* driving.

■ Appellant, acquitted of the charge of negligent driving, was subsequently convicted of manslaughter by automobile. Appellant's guilt of manslaughter by automobile was predicated on grossly negligent driving, which rendered him irrefutably guilty of the lesser offense of negligent driving. The verdicts were inconsistent.

■ While the Court of Appeals has held that inconsistent verdicts in bench trials will not be tolerated, the Court set forth an apparent exception to that rule in *Johnson*. When a trial judge, on the record, explains an apparent inconsistency in the verdicts and, in doing so, demonstrates that the court's action was proper and that there was no unfairness, the verdicts will be sustained. *See Shell*, 307 Md. at 56, 512 A.2d 358 (citing *Johnson*, 238 Md. at 545, 209 A.2d 765). In the case at hand, however, the *Johnson* exception does not apply, because the trial judge gave no explanation, on the record, for his inconsistent verdicts.

It should be noted that the State has offered no response in its brief to appellant's claim of error based on inconsistent verdicts. Unlike its response to the double jeopardy argument, patently, it was impracticable for appellant to argue inconsistent verdicts "to the trial court prior to [his] conviction for manslaughter by automobile," as the State suggests appellant was required to do to preserve his double jeopardy claim.

### Double Jeopardy: Fifth Amendment, U.S. Constitution; Maryland Common Law

Appellant's claim of error bottomed on double jeopardy guaranteed by the Maryland common law and the Constitution of the United States is summed up in *Gianiny v. State*, 320 Md. 337, 577 A.2d 795 (1990). There, The Honorable Theodore G. Bloom, specially assigned, speaking for the Court of Appeals, explains:

A comparison of the two statutes clearly demonstrates that in order to prove the greater offense, manslaughter by

automobile, the State must necessarily prove the lesser offense, negligent driving. Article 27, § 388 provides:

> Every person causing the death of another as the result of the driving, operation, or control of an automobile, motor vehicle, motorboat, locomotive, engine, car, streetcar, train or other vehicle in a grossly negligent manner shall be guilty of a misdemeanor. . . .

Under § 21–901.1(b) of the Transportation Article, one is guilty of negligent driving if he or she drives a motor vehicle in a careless or imprudent manner that endangers property or the life or person of an individual.

It is obvious that the offense of negligent driving requires no proof beyond that which is required for conviction of manslaughter by automobile or motor vehicle. The traffic offense requires proof of the operation of a motor vehicle in a negligent manner, *i.e.,* in a careless or imprudent manner that endangers property or the life or person of an individual. Manslaughter by motor vehicle requires proof of grossly negligent driving, which necessarily includes negligent driving, plus proof that someone's death resulted from that conduct. Under the *Blockburger* or required evidence test, therefore, the offenses are the same for double jeopardy purposes, and a conviction of the lesser offense bars a subsequent prosecution for the greater.

*Id.* at 343–44, 577 A.2d 795.

*Gianiny* involved a fatal automobile crash which resulted in the issuance by the investigating officer of a traffic citation charging, *inter alia,* negligent driving. Gianiny paid a fine of $45 for negligent driving on January 30, 1989 and filed a motion to dismiss the manslaughter indictment returned on February 2, 1989 on double jeopardy grounds.

■ *Gianiny,* to be sure, addressed the applicability of double jeopardy in the context of a prior *conviction* rather than a prior *acquittal,* as is presented by the facts of the case at hand. The effect on a subsequent prosecution for the greater offense, however, is the same.

Nor is it significant that the prior acquittal occurred within the context of the same proceeding. In *Wright v. State,* 307 Md. 552, 515 A.2d 1157 (1986), the Court of Appeals reviewed the trial judge's grant of the appellant's motion for judgment of acquittal on the underlying felony, i.e., the attempted robbery charge and the court's subsequent submission to the jury of felony murder and use of a handgun in the commission of a crime of violence. In recognizing the validity of Wright's claim, Judge Eldridge, speaking for the Court of Appeals, explained:

Since the petitioner Wright was, therefore, acquitted of the underlying offense, we believe that the later submission of the felony murder charge to the jury and Wright's conviction of felony murder was contrary to the settled principle, under both the Fifth Amendment and Maryland common law, that an acquittal on the merits is ordinarily final and precludes further trial proceedings upon the same charge. This is true even if the acquittal is based upon an error of law or an incorrect resolution of the facts.

The rule according finality to an acquittal on the merits is ordinarily applicable regardless of the nature of the post[-]acquittal criminal proceedings. Contrary to the view of the Court of Special Appeals, *the rule is not limited to the situation where the government attempts to institute a wholly new prosecution* on the same charge after a judgment in an earlier prosecution. Rather, the acquittal on the merits terminates the initial jeopardy on a charge, normally precluding any type of further criminal proceedings on the same charge or, in some instances, on a related charge. In this respect, the double jeopardy effect of an acquittal is somewhat different than that of a conviction.

*Id.* at 562–63, 515 A.2d 1157 (emphasis added; citations omitted).

Moreover, in *Farrell v. State,* 364 Md. 499, 506–07, 774 A.2d 387 (2001), Judge Eldridge, for the Court of Appeals, explicated the legal consequence of a not guilty verdict intentionally rendered by a court:

In holding that an intentionally rendered verdict of "not guilty" is final and precludes, under Maryland common law, any further prosecution for the same offense, this Court in *Pugh v. State,* [ ] 271 Md. [701,] 705, 319 A.2d 542, 544 [ (1974) ] stated:

> From the earliest days, it has been clear that once a verdict of not guilty has been rendered at the conclusion of a criminal trial, that verdict is final and cannot be set aside. Any attempt to do so by the prosecutor is barred by what at common law was the plea of *autrefois acquit.* Thus, in *State v. Shields,* 49 Md. 301, 303 (1878), our predecessors declined to construe a statute as permitting the State to appeal a verdict of acquittal, saying:
>
>> It has always been a settled rule of the common law that after an acquittal of a party upon a regular trial on an indictment for either a felony or a misdemeanor, the verdict of acquittal can never afterward, on the application of the prosecutor ... be set aside....
>
> The Court in *Shields* went on to point out that it made no difference whether the acquittal was based on a mistake of law or a mistake of fact. *See also State v. Adams,* 196 Md. 341, 348, 76 A.2d 575 (1950); *Cochran v. State,* 119 Md. 539, 544, 87 A. 400 (1913); *State v. Campbell and Reeves,* [ ] 7 Md.App. [538] at 540–541, [256 A.2d 537–539 (1969)].

The common law principle applied in *Pugh v. State, supra,* 271 Md. 701, 319 A.2d 542, and *State v. Shields, supra,* 49 Md. 301, has been reiterated by this Court on numerous occasions. *See, e.g., State v. Ghajari,* 346 Md. 101, 109, 695 A.2d 143, 146 (1997) ("a not guilty verdict may not be disturbed or revised by any Maryland court ... if [the] verdict of not guilty has been intentionally rendered by a court"); *Wright v. State, supra,* 307 Md. at 562–563, 515 A.2d at 1162 (the grant of a motion for judgment of acquittal, after the prosecution's case, precludes further trial proceedings and conviction for the same offense); *Brooks v. State,* [ ] 299 Md. [146,] 155, 472 A.2d [981,] 986 [ (1984) ], ("Once a trial judge intentionally acquits a defendant of a

criminal offense over which the court has jurisdiction, the prohibition against double jeopardy does not permit him [or her] to change his [or her] mind.")

Finally, the finite nature of a trial judge's pronouncement of not guilty is captured in the following quote from *Daff v. State,* 317 Md. 678, 684, 566 A.2d 120 (1989):

> The principle embodied in the plea of *autrefois acquit* has been broadly interpreted. A verdict of not guilty, even though not followed by a judgment on the docket, is sufficient to invoke the protection. *Pugh v. State, supra,* 271 Md. at 706–07, 319 A.2d 542. *Once a trial judge has intentionally rendered a verdict of not guilty, a subsequent change of mind is prohibited* even though the judge may be convinced, even moments later, that the verdict was erroneous. *Id.* at 707, 319 A.2d 542; *Brooks v. State, supra,* 299 Md. at 155, 472 A.2d 981. The court entering the acquittal must have basic subject matter jurisdiction, but procedural errors will not affect the efficacy of the acquittal for jeopardy purposes. 2 Hawkins, *Pleas of the Crown* 521 (8th ed. 1824)[.]

(Emphasis added.)

The State concedes that "negligent driving and reckless driving are lesser included offenses of manslaughter by automobile." It is undisputed that, whether appellant drove negligently and/or recklessly on the night in question had been judicially determined in appellant's favor prior to the finding of guilt on the two manslaughter charges. The State suggests that appellant should have interposed a double jeopardy argument prior to his conviction for manslaughter. The prosecutor and appellant's trial counsel presented their arguments on the facts and the law prior to the court undertaking to issue its judgment on the merits of the various charges before it. The verdict on the merits, as *Daff* makes clear, is fixed once announced. The court's pronouncements as to not guilty on the negligent and reckless driving charges followed by the guilty findings as to the drug charges and the ultimate finding of guilty on the two manslaughter charges was virtually a

seamless pronouncement of the disposition of those charges which afforded no opportunity for appellant's trial counsel to interpose any objection on the basis of double jeopardy grounds.

### Collateral Estoppel

Citing *Ferrell, supra,* appellant, it appears as an afterthought, raises the issue of collateral estoppel. In *Ferrell,* the State was precluded from retrying appellant for armed robbery after the jury in the previous trial, unable to reach a verdict as to armed robbery, found the appellant not guilty of using a handgun in the commission of a felony. The seminal case announcing the application of collateral estoppel to criminal cases is *Ashe v. Swenson, supra.* In that case, the Supreme Court concluded that collateral estoppel—or issue preclusion—was part of the guarantee under the Fifth Amendment to the United States Constitution. The Court, in *Ferrell,* summarized the factual backdrop in *Ashe v. Swenson, supra:*

> [T]he defendant was charged with the robbery of one of six poker players who had been robbed by three or four armed men. The only contested issue in the case was whether the defendant was one of the robbers. At the end of the trial, the jury found the defendant not guilty. Six weeks later, the defendant was brought to trial and convicted for the robbery of one of the other poker players. The United States Supreme Court reversed the conviction. . . .

*Ferrell,* 318 Md. at 241, 567 A.2d 937.

In finding that Ashe's prosecution for the robbery of one victim during an incident for which he had been acquitted of robbing another victim was barred by collateral estoppel, the Supreme Court concluded:

> "Collateral estoppel" is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. Although first developed in

civil litigation, collateral estoppel has been an established rule of federal criminal law at least since this Court's decision more than 50 years ago in *United States v. Oppenheimer,* 242 U.S. 85, 37 S.Ct. 68, 61 L.Ed. 161 [ (1916) ]. As Mr. Justice Holmes put the matter in that case, "It cannot be that the safeguards of the person, so often and so rightly mentioned with solemn reverence, are less than those that protect from a liability in debt." 242 U.S.[ ] at 87[ ] n. 7, 37 S.Ct. 68[.] As a rule of federal law, therefore, "it is much too late to suggest that this principle is not fully applicable to a former judgment in a criminal case, either because of lack of 'mutuality' or because the judgment may reflect only a belief that the Government had not met the higher burden of proof exacted in such cases for the Government's evidence as a whole although not necessarily as to every link in the chain." *United States v. Kramer,* 289 F.2d 909, 913 [ (1961) ].

*Ashe,* 397 U.S. at 443, 90 S.Ct. 1189.

 Under both the Fifth Amendment to the United States Constitution and Maryland common law, it is established that the doctrine of collateral estoppel is embodied in the double jeopardy prohibition. *Ashe v. Swenson, supra; Ferrell,* 318 Md. at 241, 567 A.2d 937. The critical language in the *Ashe* Court's decision is "when an issue of ultimate *fact* has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe,* 397 U.S. at 443, 90 S.Ct. 1189. Here, the valid and final judgments before us are the guilty findings of negligent driving and reckless driving entered by the trial judge. *Ferrell* and *Ashe,* however, consider only whether issue preclusion operates as a bar to prosecution in "any future lawsuit" rather than within the same proceeding. Moreover, the sole disputed issue in Ferrell was the criminal agency of the accused, i.e., whether Ferrell robbed the victims with a handgun.

In the case *sub judice,* in rendering the guilty verdicts for negligent driving and reckless driving, the trial court conclud-

ed: "But the only thing is speed. You got to have merger.[4] Not guilty as to both (reckless driving and negligent driving)." Rather than the court's pronouncement constituting a determination on an ultimate issue of fact, the "not guilty" verdicts are the disposition of *legal* issues—essential elements of the greater offense, automobile manslaughter.

 The discussion in *Ferrell* supports appellant's claim that an acquittal of the lesser included offense operates as a bar to conviction of the flagship offense. *Ferrell,* unlike the case at bar, however, involved a successive prosecution, the *sine qua non* for application of collateral estoppel. As the Supreme Court explained in *Ashe:*

The federal decisions have made clear that the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality. Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter[s], and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." The inquiry "must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings." *Sealfon v. United States,* 332 U.S. 575, 579, 68 S.Ct. 237, 92 L.Ed. 180 [ (1948) ]. Any test more technically restrictive would, of course, simply amount to a rejection of the rule of collateral estoppel in criminal proceedings, at least in every case where the first judgment was based upon a general verdict of acquittal.

*If a later court is permitted to state that the jury may have disbelieved substantial and uncontradicted evidence of the prosecution* on a point the defendant did not contest, the

---

4. The Court's reference is to merger of Count 19, Driving vehicle in excess speed on highway, into Count 20, Failure to control speed to avoid collision.

possible multiplicity of prosecutions is staggering.... In fact, such a restrictive definition of "determined" amounts simply to a rejection of collateral estoppel, since it is impossible to imagine a statutory offense in which the government has to prove only one element or issue to sustain a conviction.

. . .

Straightforward application of the federal rule to the present case can lead to but one conclusion. For the record is utterly devoid of any indication that the first jury could rationally have found that an armed robbery had not occurred, or that Knight had not been a victim of that robbery. The single rationally conceivable issue in dispute before the jury was whether the petitioner had been one of the robbers. And the jury by its verdict found that he had not. The federal rule of law, therefore, would make a second prosecution for the robbery of Roberts wholly impermissible.

(Emphasis added; footnote omitted.)

The *Ashe* Court had looked to a Fifth Circuit Court of Appeals decision, *Yawn v. United States*, 244 F.2d 235 (1957), in crafting its thesis that collateral estoppel was applicable to criminal cases. Significantly, in *Yawn*, the prohibition against a subsequent prosecution was couched in terms of *res judicata.*

The Court of Appeals, in *Colandrea v. Wilde Lake Community Ass'n.*, 361 Md. 371, 389, 761 A.2d 899 (2000), quoting its prior decision in *FWB Bank v. Richman*, 354 Md. 472, 731 A.2d 916 (1999), delineated the elements of *res judicata:*

The basic rule of claim preclusion in this context is not difficult: "A valid and final personal judgment rendered in favor of the defendant bars another action by the plaintiff on the same [c]laim." RESTATEMENT (SECOND) OF JUDGMENTS § 19 (1982).... [T]he traditional principle of *res judicata* has three elements: "(1) the parties in the present litigation should be the same or in privity with the parties to the earlier case; (2) the second suit must present

the same cause of action or claim as the first; and (3) in the first suit, there must have been a valid final judgment on the merits by a court of competent jurisdiction." . . .

*See also Gertz v. Anne Arundel County,* 339 Md. 261, 661 A.2d 1157 (1995); *deLeon v. Slear,* 328 Md. 569, 616 A.2d 380 (1992).

■ The purpose undergirding the application of collateral estoppel and *res judicata* is to prevent parties from relitigating the same issues at successive judicial proceedings. The Court, in *Yawn,* reasoned:

> In the present case the Government had, and has, every right to establish the guilt of the accused of the separate offense of conspiracy to violate the liquor tax laws despite the acquittal of unlawful possession of the still. But to allow the Government to have a second opportunity to establish the precise fact of possession decided by another [c]ourt of competent jurisdiction in favor of the accused is to ignore the rule that " . . . *the same facts cannot be twice litigated by the same sovereign against the same defendant.*" . . .
> We hold that the Government was precluded as a matter of law under these circumstances from making such an attempt. . . . And to ascribe a different legal meaning to "possession" is litigated in the first trial from "possession" litigated in the second would be an exercise in semantics unwarranted in this fact situation both in law and in reason. . . .

(Emphasis added; citations omitted.)

■ In sum, double jeopardy and inconsistent verdicts, uniquely protections against multiple prosecution and punishment in a criminal setting, may be applicable in the same proceeding or in successive proceedings. *See Ferrell,* 318 Md. at 250, 567 A.2d 937. Collateral estoppel, borrowed from civil jurisprudence and embodied in the double jeopardy prohibition, contemplates a second or subsequent prosecutions and precludes *re-litigation* of factual issues. The case, *sub judice,* does not involve re-litigation of issues and, hence, collateral estoppel is inapplicable to the case before us.

*The State's Claim of Non-preservation*

 Luminously telling is the conspicuous absence of any rejoinder in the State's brief to appellant's inconsistent verdicts argument. Because appellant raises the issue of double jeopardy for the first time on appeal, posits the State, he has failed properly to preserve the issue for appeal. Maryland Rule 8–131 provides:

> Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court, *but the Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal.*
>
> . . .
>
> (c) Action tried without a jury. When an action has been tried without a jury, the appellate court will review the case on both the law and the evidence. It will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses.

The State points out that the *Howell* Court considered the preservation issue in the context of Maryland Rule 1085, presently Maryland Rule 8–131, which provides that "[t]his Court will ordinarily not decide any point or question which does not plainly appear by the record to have been tried and decided by the lower court." Interestingly, *Howell* engages in an in-depth analysis of *Carbaugh v. State,* 294 Md. 323, 449 A.2d 1153 (1982), wherein the Court of Appeals reviewed our decision in *Carbaugh v. State,* 49 Md.App. 706, 435 A.2d 116 (1981), where we held that failure to raise double jeopardy by way of a pre-trial motion under then-Maryland Rule 736 constituted waiver for purposes of subsequent appellate review. Appellee expressly invokes Maryland Rule 8–131, yet argues "[appellant] did not plead this doctrine [*autrefois acquit* ], nor did he move to dismiss the two counts of manslaughter by automobile" under double jeopardy principles. Patently, a plea of *autrefois acquit* was unavailable to appel-

lant, given the posture of the proceedings when the trial court found appellant not guilty of negligent driving and reckless driving.

The State points out that, after appellant was found not guilty of negligent driving and reckless driving, he was then asked by the trial court whether he had anything to say about the remaining counts. The record transcript indicates that the trial court inquired, "Does anyone want to say anything else as far as to guilt or innocence in this regard, with regard to 1, 2, 4, 5, 6? Anything else from you [appellant's counsel]?" Counts 5 and 6 charged appellant with manslaughter by automobile. Nevertheless, at that juncture, there was neither an attempt by the Assistant State's Attorney to initiate a "successive prosecution" or an indication by the trial judge that he was about to convict appellant on the two counts of manslaughter. A plea of *autrefois acquit* or a motion to dismiss are responsive actions to the institution of initial proceedings. By the time appellant's trial counsel was in a position to know that the trial court would find him guilty of manslaughter, it was too late. The convictions were a *fait accompli.*

Neither can the State find solace in *Howell, Hewitt v. State,* 242 Md. 111, 218 A.2d 19 (1966), or *Medley v. State,* 52 Md.App. 225, 448 A.2d 363 (1982). Reminding us of the well-settled rule that even errors of constitutional dimension may be waived by failure to interpose a timely objection, these cases deal almost exclusively with what is now Maryland Rule 8–131. Judge Moylan, in *Howell,* instructs us:

We know of no principle or practice under which a judgment of a trial court may be reversed or modified on appeal except for prejudicial error committed by the trial judge. It is a misuse of language to label as error any act or failure to act by a party, an attorney, a witness, a juror, or by anyone else other than the judge. In other words, error in a trial court may be committed only by a judge, and only when he rules, or, in rare instances, fails to rule, on a question raised before him in the course of a trial, or in pre[-]trial or post-trial proceedings. *Appellate courts look only to the rulings*

*made by a trial judge, or to his [or her] failure to act when action was required, to find reversible error.*

This philosophy finds expression throughout the appellate process and specifically in Maryland Rules 885 and 1085, which provide that the appellate courts will not ordinarily decide any point or question which does not plainly appear by the record to have been tried and decided by the lower court, and further by the judicially expressed rule that the appellate court will consider only contentions raised and argued in the briefs. *See Fidelity & Deposit Co. v. Mattingly Lumber Co.*, 176 Md. 217, 4 A.2d 447 [ (1939) ], *Harmon v. State Roads Comm.*, 242 Md. 24, 217 A.2d 513 (1966); *Ricker v. Abrams*, 263 Md. 509, 283 A.2d 583 (1971). *Howell*, 56 Md.App. at 680, 468 A.2d 688 (citing *Braun v. Ford Motor Co.*, 32 Md.App. 545, 548–49, 363 A.2d 562 (1976)).

Finding appellant guilty of the two manslaughter charges constituted prejudicial error committed by the trial judge; in the words of the *Howell* Court, he committed error when he "rule[d] ... on a question raised before him in the course of [the] trial." *Id.* Given the posture of the case and the circumstances extant, appellant's trial counsel could not have afforded the court the opportunity to cure its error in finding appellant guilty of manslaughter.

## III

Appellant argues that the evidence was insufficient to sustain his convictions for possession of cocaine with intent to distribute and possession of marijuana with intent to distribute. We disagree.

We must decide "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *accord State v. Albrecht*, 336 Md. 475, 478–79, 649 A.2d 336 (1994); *Jensen v. State*, 127 Md.App. 103, 117, 732 A.2d 319 (1999), *cert. denied*, 356 Md. 178, 738 A.2d 855 (1999).

 Article 27, § 277(s) defines possession as "the exercise of actual or constructive dominion or control over a thing by one or more persons." To support a conviction for a possessory offense, the "evidence must show directly or support a rational inference that the accused did in fact exercise some dominion or control over the prohibited narcotic drug in the sense contemplated by the statute, *i.e.,* that [the accused] exercised some restraining or directing influence over it." *Garrison v. State,* 272 Md. 123, 142, 321 A.2d 767 (1974); *accord McDonald v. State,* 347 Md. 452, 474, 701 A.2d 675 (1997), *cert. denied,* 522 U.S. 1151, 118 S.Ct. 1173, 140 L.Ed.2d 182 (1998). "The accused, in order to be found guilty, must know of both the presence and the general character or illicit nature of the substance. Of course, such knowledge can be proven by circumstantial evidence and by inferences drawn therefrom." *Dawkins v. State,* 313 Md. 638, 651, 547 A.2d 1041 (1988); *accord In re: Nahif A.,* 123 Md.App. 193, 209, 717 A.2d 393 (1998).

 Possession may be constructive or actual, exclusive or joint. *See State v. Leach,* 296 Md. 591, 596, 463 A.2d 872 (1983). The following factors may be considered in determining joint or constructive possession:

1) proximity between the defendant and the contraband, 2) the fact that the contraband was within the view or otherwise within the knowledge of the defendant, 3) ownership or some possessory right in the premises or the automobile in which the contraband is found, or 4) the presence of circumstances from which a reasonable inference could be drawn that the defendant was participating with others in the mutual use and enjoyment of the contraband.

*Hall v. State,* 119 Md.App. 377, 394, 705 A.2d 50 (1998)(quoting *Folk v. State,* 11 Md.App. 508, 518, 275 A.2d 184 (1971)). In *Anaweck v. State,* 63 Md.App. 239, 492 A.2d 658 (1985), we held, "That the narcotics were not on his person but in the house of which he was a resident did not prevent the inference the police and the trial court drew—that he had possession and control of narcotics—from properly and permissibly being

drawn." *Id.* at 243, 492 A.2d 658 (quoting *Henson v. State,* 236 Md. 518, 524–25, 204 A.2d 516 (1964)), *overruled on other grounds, Wynn v. State,* 351 Md. 307, 315 n. 4, 718 A.2d 588 (1998).

Finally, evidence showing that a defendant fled or used a false name to conceal his or her identity following a crime can constitute relevant evidence on the issue of consciousness of guilt. *See Wright v. State,* 312 Md. 648, 654–55, 541 A.2d 988 (1988); *accord Sorrell v. State,* 315 Md. 224, 228, 554 A.2d 352 (1989); *Hunt v. State,* 312 Md. 494, 508–09, 540 A.2d 1125 (1988); *Davis v. State,* 237 Md. 97, 105, 205 A.2d 254 (1964), *cert. denied,* 382 U.S. 945, 86 S.Ct. 402, 15 L.Ed.2d 354 (1965).

In the present case, appellant argues that the evidence is insufficient to prove that he either knew of the presence of the crack cocaine and marijuana or exercised the requisite dominion or control over the crack cocaine and marijuana that were found in the car. Whether appellant had knowledge of the presence of the narcotics and exercised control over them were questions of fact for the trial judge to decide. As stated above, Maryland law permits a trial judge to resolve these questions through rational inferences based on circumstantial evidence.

As to knowledge and possession, the evidence demonstrated that (1) appellant exercised a possessory interest in the car; (2) the narcotics were kept in close proximity to appellant; (3) at the time the car was rented by Hall, the drugs were not under the driver's seat; (4) appellant eluded police after the police attempted to affect a routine traffic stop; and (5) fled from the scene of the accident. With respect to appellant's intent to distribute the narcotics, the evidence showed that the narcotics were packaged in a baggie containing fifty vials of crack cocaine and fifteen small packets of marijuana.

We hold that the trial judge's findings and inferences as to possession and intent to distribute were rational and, therefore, proper. As a result, we hold that the trial court was not

clearly erroneous in finding sufficient evidence to sustain appellant's convictions for possession of cocaine with intent to distribute and possession of marijuana with intent to distribute.

CONVICTIONS FOR MANSLAUGHTER BY AUTOMOBILE REVERSED; CONVICTIONS FOR POSSESSION OF MARIJUANA WITH INTENT TO DISTRIBUTE AND POSSESSION OF COCAINE WITH INTENT TO DISTRIBUTE AFFIRMED.

COSTS TO BE PAID ONE–HALF BY APPELLANT AND ONE–HALF BY BALTIMORE COUNTY.