572 A.2d 536

**Jackie HOFFERT**

v.

**STATE of Maryland.**

**No. 135, Sept. Term, 1989.**

Court of Appeals of Maryland.

April 19, 1990.

378

Diane G. Goldsmith, Assigned Public Defender, Baltimore, for appellant.

Sarah E. Page, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for appellee.

Argued before ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and CHASANOW, JJ., and CHARLES E. ORTH, Jr., Judge of the Court of Appeals of Maryland (retired, Specially Assigned).

CHARLES E. ORTH, Jr., Judge.

Jackie Hoffert was convicted by a jury in the Circuit Court for Baltimore City of the misdemeanor of using a handgun in the commission of a crime of violence. He was sentenced to imprisonment for a term of 25 years pursuant to Maryland Code (1957, 1987 Repl.Vol., 1989 Cum.Supp.), Article 27, § 643B (mandatory sentences for crimes of violence). He appealed from the judgment, and, on our own motion, we ordered the case certified to us before decision by the Court of Special Appeals. We reverse.

## I

### *The Trial*

The case went to the jury on four charges. As shown on the verdict sheet given the jury, they were:

1) Attempted murder in the first degree.
2) Attempted murder in the second degree.
3) Robbery with deadly weapon.
4) Use of a handgun in the commission of a crime of violence.

When, in the course of his instructions, the trial judge reached the fourth charge, he told the jury that a handgun used in a crime of violence constitutes a separate and distinct offense. He defined "handgun" and noted that before the jury could find Hoffert guilty of using it in the commission of a crime of violence, they must be convinced,

(1) that a handgun was used by Hoffert, and (2) that he used it in the commission of a crime of violence. The judge informed the jury that attempted murder, whether in the first degree or the second degree, and robbery with a deadly weapon are crimes of violence. He admonished the jury:

> You may not find the Defendant guilty of use of a handgun in the commission of a crime of violence unless you are convinced beyond a reasonable doubt that he is guilty of a crime of violence. That is, in order to find the Defendant guilty of use of a handgun in the commission of a crime of violence you must also be convinced beyond a reasonable doubt that he committed a crime of violence which is either attempted murder in the first degree, attempted murder in the second degree or robbery with a dangerous and deadly weapon.

After counsels' closing arguments, the judge emphasized his admonition. He said:

> Finally, again I remind you that you may not find the Defendant guilty of use of a handgun in the commission of a crime of violence along with all the other elements required unless you find him guilty of the underlying crime of violence, either attempted murder in the first or second degree or robbery with a deadly weapon.
>
> Should the Defendant be found not guilty of attempted murder in the first degree, not guilty of attempted murder in the second degree, not guilty of robbery with a deadly weapon, you may not find him guilty of use of a handgun in the commission of a crime of violence.

The foreman announced the verdicts. The transcript of the proceedings reads:

> THE CLERK: Mr. Foreman, please stand. How do you find the Defendant Jackie Hoffert where he is charged with attempted murder in the first degree, not guilty or guilty?
>
> THE FOREMAN: Not guilty.

THE CLERK: How do you find him in the charge of attempted murder in the second degree, not guilty or—

THE FOREMAN: Not guilty.

THE CLERK: How do you find him in the charge of robbery with a deadly weapon, guilty or not guilty?

THE JUROR: Not guilty.

Before the verdicts could be hearkened, the judge asked the prosecutor if he wished to have the jury polled. Upon the prosecutor's affirmative reply, the clerk conducted the poll. It showed that the verdicts were unanimous. The clerk then proceeded to hearken, but the hearken went only to the first charge. The clerk said:

Hearken the verdict as the record has recorded it. You say Jackie Hoffert where he is charged with attempted murder in the first degree that he is not guilty and so say you all.

The judge addressed the jury:

Members of the jury, having received your verdicts here today your service in this case is now complete. I must tell you, however, that—

The judge did not have the opportunity to disclose to the jury what he had in mind because he was interrupted by a juror. But some indication of his reaction to the verdicts may be gleaned from his immediately preceding question to defense counsel, "Can you also walk on water?" In any event, a juror called attention to the fourth charge on the verdict sheet, the use of a handgun in the commission of a crime of violence. The judge asked the foreman for the jury's verdict on that charge. The answer of "guilty" obviously came as a surprise to the judge and counsel. The judge said to counsel, "Come to the bench." A conference ensued in the presence of Hoffert. The judge asked the prosecutor and defense counsel:

[T]he verdicts as recorded in this court from the jury is that the Defendant is not guilty of any of the crimes of violence. Having been found guilty of use of a handgun in the commission of a crime of violence how can we enter that verdict?

During the discussion that followed, the judge indicated that he was not going to accept the verdict and suggested that the prosecutor ask for a new trial, apparently on the fourth charge. The prosecutor was not amenable. His view was to accept the verdict. He argued:

> Juries compromise all the time.... [T]hey find some rational reason for it.... [The jury] may have ignored your instructions but they found him guilty and the law says they can compromise.

The judge gave counsel ten minutes to research the law. The jury was sent back to the jury room with the command not to discuss the case—"Just go to the jury room and wait." After a brief recess the proceedings resumed. The court informed counsel that he intended "to put the jury back in the box and take their verdict as to the [handgun charge]." He would have the jury polled if requested. He said:

> [D]uring the polling I will ask the jurors if their verdict is the same as the foreman and was that their verdict prior to the time we took the last recess.

The jury was put in the box. The procedure announced by the judge was carried out. The foreman said that the verdict of the jury was "guilty." Defense counsel requested that the jury be polled. The judge asked each juror if his verdict was the same as stated by the foreman. Upon receiving an affirmative reply, the judge asked each juror, including the foreman, "Was [guilty] your verdict prior to the time we took the last recess?" Each juror answered that it was. At the direction of the judge, the clerk hearkened the guilty verdict and also the not guilty verdicts. Upon being assured by the prosecutor and defense counsel that they had nothing "else on the verdict while the jury [was] intact," the judge dismissed the jury in these words:

> Members of the jury, your service is now completed in this case. You are free to go.

The jury was excused from the courtroom.

During the disposition proceedings, defense counsel informed the judge that Hoffert would like the court to

explain, in light of the not guilty verdicts, what the crime of violence was in the handgun charge.  The judge replied:

I can't answer that.  Maybe the Court of special Appeals will some day.

The judge did not think it was "time to go to law school...."  The only thing he could tell Hoffert was that the verdict was allowed to stand because it was permitted by Maryland law.  We do not think it was.[1]

## II

### *The Law*

### (1)

### *Inconsistent Verdicts*

Maryland Code (1957, 1987 Repl.Vol., 1989 Cum.Supp.), Article 27, § 36B(d) provides:

Any person who shall use a handgun ... in the commission of any felony or any crime of violence as defined in § 441 of this article shall be guilty of a separate misdemeanor and on conviction thereof shall, in addition to any other sentence imposed by virtue of commission of said felony or misdemeanor: [be subject to a separate sentence as therein prescribed].

A crime of violence as defined in § 441(e) includes attempted murder and robbery with a deadly weapon.

We said in *Ford v. State,* 274 Md. 546, 550–551, 337 A.2d 81 (1975) (footnote omitted):

[S]ection 36B(d) requires the trier of fact to determine beyond a reasonable doubt, from the evidence, that the accused used a handgun during the commission of either a felony or a crime of violence as a prerequisite to being

---

1.  It is not disputed that the handgun which is the subject of the fourth charge was the weapon alleged to have been used in the attempted murders and the robbery.  And a review of the evidence adduced at the trial shows that it was legally sufficient to support a conviction of all the charges.

convicted of unlawfully using a handgun in the commission of either.

"Consequently," we observed in *Shell v. State*, 307 Md. 46, 53, 512 A.2d 358 (1986), "commission of a felony or crime of violence is an essential ingredient of the § 36B(d) handgun offense. It is an element of the crime."

> If the jury determines that the accused did not commit a felony or crime of violence but is guilty of use of a handgun in the commission of such felony or crime of violence, the jury has obviously rendered inconsistent verdicts.

*Shell*, 307 Md. at 53, 512 A.2d 358. Thus, "verdicts [of] not guilty of the crime of violence and guilty of use of a handgun in the commission of such a crime ... would be contrary to law...." *Mack v. State*, 300 Md. 583, 595, 479 A.2d 1344 (1984). Therefore, "a trial court in a criminal case must, if requested by the accused, instruct a jury that an accused cannot be found guilty of use of a handgun in the commission of a crime of violence under ... Art. 27, § 36B(d) if found not guilty of a crime of violence as defined in ... Art. 27, § 441(e)." *Id.* at 587, 479 A.2d 1344, quoted in *Shell* [307 Md.] at 54, 512 A.2d 358. Nevertheless, inconsistent verdicts by a jury "are normally tolerated...." *Wright v. State*, 307 Md. 552, 576, 515 A.2d 1157 (1986). *See Shell*, 307 Md. at 54, 512 A.2d 358. This is so because of "the unique role of the jury, [and has] no impact whatsoever upon the substantive law explicated by the Court." *Mack*, 300 Md. at 594–595, 479 A.2d 1344. Due to the singular role of the jury in the criminal justice system, "there is a reluctance to interfere with the results of unknown jury interplay, at least without proof of 'actual irregularity.'" *Shell* [307 Md.] at 54, 512 A.2d 358, quoting *Ford* [274 Md.] at 553, 337 A.2d 81.

> The general view is that inconsistencies may be the product of lenity, mistake, or a compromise to reach unanimity, and that continual correction of such matters

would undermine the historic role of the jury as the arbiter of questions put to it.

*Shell* at 54, 512 A.2d 358.   On the other hand

an instruction directing the jury to render consistent verdicts is beneficial because it minimizes the possibility of inconsistent verdicts that result in a conviction contrary to law.   Such an instruction does not in any way impair the jury's function.   Even after such an instruction has been given, the jury retains its power to err, either fortuitously or deliberately, and to compromise or exercise lenity.   It, therefore, retains the power to be the final arbiter in the determination of which, if any, of the crimes charged the accused is guilty.

*Mack,* 300 Md. at 597, 479 A.2d 1344.[2]

■   It follows from our decisions that the instructions given the jury were in full accord with the law, but that the jury was free to ignore them.

### (2)

### *The Effect of the Not Guilty Verdicts*

■   It is apparent that when the jury announced the verdicts of not guilty and were polled, the judge thought that the trial was over.   As we have seen, the judge told the jury:

---

**2.**  Inconsistent verdicts in a court trial are not tolerated.  The rationale for sustaining them in a jury trial does not support allowing them to stand in a court trial.  *Shell v. State,* 307 Md. 46, 55–58, 512 A.2d 358 (1986).  *Johnson, Etc. v. State,* 238 Md. 528, 541, 209 A.2d 765 (1965), quoting with approval *United States v. Maybury,* 274 F.2d 899 (2nd Cir.1960), distinguished between inconsistent verdicts in a jury trial and such verdicts in a nonjury trial.  We pointed out in *Shell* [307 Md.] at 57, 512 A.2d 358, quoting *Mack v. State,* 300 Md. 583, 587, 596, 479 A.2d 1344 (1984):

It would make utterly no sense to require a trial judge to instruct the jury "that an accused cannot be found guilty of use of a handgun in the commission of a crime of violence ... if found not guilty of a crime of violence," ... but to hold that the trial judge himself is permitted to ignore this rule.

> Members of the jury, having received your verdicts here today your service in this case is now complete.

He was right. But he went astray by permitting the jury to render a verdict on the handgun charge. Then, when the jury returned a verdict of guilty, the judge was presented with a real dilemma. He resolved the dilemma by allowing the verdict to stand and entering judgment on it. This was wrong. He was encouraged to travel the primrose path by the prosecutor. What both the judge and the prosecutor overlooked was the effect of the not guilty verdicts on the viability of the trial.

When the jury was polled on the verdicts of not guilty on the first three charges, *see* Md. Rule 4–327(e), and the poll disclosed that the verdicts were unanimous, the verdicts were final. *Smith v. State*, 299 Md. 158, 164–170, 472 A.2d 988 (1984); *Pugh v. State*, 271 Md. 701, 705, 319 A.2d 542 (1974). The verdicts were legally proper. They were not contrary to the law and, without more, were in full accord with the judge's instructions which properly reflected the law. Nor were they "ambiguous, inconsistent, unresponsive, or otherwise defective." *See Smith* [299 Md.] at 170, 472 A.2d 988. The verdicts stood complete without a verdict on the handgun charge. The guilt stage of the trial was over at that point. The jury had no further function to perform. It had exhausted its power and authority and could not be called upon to exercise additional duties in the case. In short, the case was no longer within the province of the jury. In the circumstances, the State was not entitled to a verdict on the handgun charge. It follows that the judge erred in permitting the jury to return a verdict on the fourth count. It was not a matter of the exercise of judicial discretion. The judge had no discretion to exercise because the verdict on the fourth charge was null and void and of no effect whatsoever. It certainly could not serve as the basis for the imposition of punishment and the entry of

a judgment.[3]

The bottom line is that the judgment of the Circuit Court for Baltimore City must be reversed. Hoffert stands not guilty on each of the four charges on which he was tried. *See Smith,* 299 Md. at 163, 472 A.2d 988; *Pugh,* 271 Md. at 706, 319 A.2d 542.

JUDGMENT REVERSED;

COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.

CHASANOW, Judge in which RODOWSKY, Judge and McAULIFFE, Judge concur.

I respectfully dissent from the majority's conclusion in the instant case that even though the jury was still in the jury box, and even though it was prepared to return a verdict on one of the charges on the verdict sheet, as soon as the jury was polled as to some, although not all, of the charges submitted for its determination, that "the guilt stage of the trial was over...."

The majority opinion cites *Smith v. State,* 299 Md. 158, 472 A.2d 988 (1984) for the proposition: "When the jury was polled on the verdicts of not guilty on the first three charges, ... and the poll disclosed that the verdicts were unanimous, the verdicts were final." Opinion at 386. The facts and holding in *Smith* do not seem to support this conclusion.

In *Smith* the issue before the Court was whether there was a final unanimous verdict of not guilty on a count of robbery rendered by the jury at Smith's first trial, which would have precluded his second trial for that charge. The

---

**3.** When the verdicts of the jury are not complete, and the jury is still under the aegis of the court, the jury may resume its deliberations to resolve the verdicts required to be rendered. For example, if the charges are arson and burglary and the jury returns a verdict only on the arson offense, it may be called upon to return a verdict on the burglary offense. Such circumstances are readily distinguishable from the circumstances here.

Court summarized the taking of the verdict in the first trial as follows:

> The forelady first announced the verdicts of the jury to be not guilty of the murder and robbery charges and guilty of the weapon charge. On the first poll of her, she verified (albeit not without uncertainty) that the verdicts as she had announced them were her verdicts.[1] On the poll of the other eleven jurors, each of them said that his verdict was not guilty on the murder charge and on the robbery charge. But on the weapon charge [they were divided]. When the forelady was polled a second time because she 'was hesitant' on the first poll, she declared her verdict to be guilty on each of the three charges.

*Id.* at 177–78, 472 A.2d at 997.

Following the second poll of the forelady, the judge had the jury resume their deliberations. When the jury ultimately announced that they were deadlocked, the judge discharged the jury. Smith was retried on all charges, including the robbery charge, over his objection on double jeopardy grounds. The second trial resulted in Smith's convictions of the robbery and handgun offenses. Smith claimed that in his first trial, since the forelady had announced a verdict of not guilty on the robbery charge and the jury was unanimous on the first polling, there was a final verdict of not guilty and he could not be retried on the robbery charge. We held that there had been no final verdict by the first jury, and the second trial was proper. We noted that: "When a poll is demanded, the verdict becomes final only upon its acceptance after the poll." *Id.* at 168, 472 A.2d at 993. In *Smith*, we also quoted *Heinze v. State*, 184 Md. 613, 42 A.2d 128 (1945):

> It is a fundamental principle that the verdict of a jury in a criminal case has no effect in law until it is recorded and finally accepted by the court.... Until the announce-

---

**1.** The forelady's uncertainty, if any, went to the murder charges, not to the robbery with a deadly weapon charge, which was the subject of the appeal.

ment that the verdict has been recorded, the jury have the right to amend or change any verdict; and when it is so amended it is the real verdict of the jury and it may be properly accepted by the court.

*Id.* at 616–17, 42 A.2d at 130.

In the instant case we know that the verdict on the attempted murder in the first degree count had been recorded based on the fact that the clerk had hearkened the jury on that count. The jury was not hearkened, but apparently the verdicts on the attempted murder in the second degree and robbery counts had been recorded. However, it is clear that no verdict had been announced or recorded on the use of a handgun in the commission of a crime of violence count. I cannot agree with the majority's conclusion that, after the jury was polled on some, but not all of the charges:

The verdicts stood complete without a verdict on the handgun charge. The guilt stage of the trial was over at that point. The jury had no further function to perform.

The holding in the majority opinion should not be, and indeed is not, premised on any inconsistency between the handgun charge and the remaining charges. It is a well established rule in this State that inconsistent verdicts by a jury may be the result of lenity or compromise and should be accepted by the court in the absence of proof of actual irregularity. *See Ledbetter v. State,* 224 Md. 271, 167 A.2d 596 (1961); *Williams v. State,* 204 Md. 55, 102 A.2d 714 (1954); *Leet v. State,* 203 Md. 285, 100 A.2d 789 (1953). "[V]erdict inconsistency has been considered in several cases, and has been consistently rejected as forming the basis for voiding a conviction." *Ford v. State,* 274 Md. 546, 552, 337 A.2d 81, 85 (1975). This Court has consistently affirmed convictions for use of a handgun in the commission of a felony or crime of violence even though the Defendant was acquitted by the same jury of all of the underlying felonies or crimes of violence. *Mack v. State,* 300 Md. 583, 479 A.2d 1344 (1984); *Ford, supra.*

I would not conclude that the verdict, as initially rendered, "stood complete." A verdict was neither taken nor recorded on one of the counts submitted to the jury for its determination. The trial was not over, and the jury still had a function to perform—to announce the verdict that they had reached on the remaining count. As this Court stated in *Smith*, "neither hearkening nor polling cures a verdict that is defective when it is hearkened or polled in its defective form." *Smith* [299 Md.] at 169, 472 A.2d at 993. The verdict initially taken by the court was incomplete. The verdict should not become complete, final, and invulnerable to change merely because the jury was polled on some of the charges.

Even if, as the majority concludes, the verdicts on the attempted murder and robbery counts were final, the conviction on the handgun count should still be affirmed. The jury had not yet announced its verdict on one of the counts submitted to it. Until the jury has left the courtroom and dispersed, the judge should be able to allow them to complete their verdict. *Wharton's Criminal Procedure* states:

> The mere announcement of the discharge of the jurors does not preclude recalling them if they have not yet dispersed and mingled with the bystanders. Although the decisions are not uniform, it has often been held that, when the jurors have rendered their verdict and have been discharged, but have not yet left the courtroom or the courthouse, the trial judge may recall the order of discharge and reassemble the jurors to amend their verdict as to a matter of form or, in some cases, substance.

4 C. Torcia, *Wharton's Criminal Procedure*, 12th Ed. § 578, at 141 (1976).

Several decisions throughout the country have held that where a jury had been discharged, the panel may be reconvened to complete their verdict on omitted counts as long as the jury panel had not dispersed and been subject to outside influence. *See, e.g., Marable v. State*, 229 Ala. 435, 157 So. 861 (1934); *State v. Fornea*, 242 La. 978, 140 So.2d 381 (1962); *People v. Ham*, 7 Cal.App.3d 768, 86 Cal.Rptr. 906

(1970), overruled on other grounds in *People v. Compton*, 6 Cal.3d 55, 98 Cal.Rptr. 217, 490 P.2d 537 (1971); *People v. Powell*, 99 Cal.App.2d 178, 221 P.2d 117 (1950); *West v. Texas*, 170 Tex.Cr.App. 317, 340 S.W.2d 813 (1960).

In *Summers v. United States*, 11 F.2d 583, 586 (4th Cir.1926), *cert. denied*, 271 U.S. 681, 46 S.Ct. 632, 70 L.Ed. 1149, the United States Court of Appeals for the Fourth Circuit noted:

> The general rule is as stated in Abbott's Trial Brief, Criminal Causes, p. 730: 'After a verdict has been rendered, and the jury, after being discharged, have separated, the jury cannot be recalled to amend their verdict. But the mere announcement of their discharge does not, before they have dispersed and mingled with the bystanders, preclude recalling them.'

*Ager v. Baltimore Transit Company*, 213 Md. 414, 132 A.2d 469 (1957) dealt with a similar situation in the context of a civil jury trial. After deliberating for some time, the jury returned to the jury box and informed the judge that they were unable to agree upon a verdict. The judge then said to the jury: "Well, then, it is incumbent upon me, and I do discharge you from further consideration of the case." *Id.* at 418, 132 A.2d at 471. Before any juror had left the jury box, the clerk of the court apparently received some indication from a juror or jurors that they still might reach a verdict, and the clerk told the judge that the jurors had changed their minds. The judge directed the jury to return to the jury room and resume their deliberations. The jury ultimately reached a verdict. At issue on appeal was whether, after the judge discharged the jury, they were "without further power or capacity to consider the case." *Ibid.* This Court sustained the trial judge's decision to allow the jury to resume its deliberations. We stated:

> It was held in the case of *Koontz v. Hammond*, 62 Pa. 177, that, although the jury had been ordered discharged, they could still render a verdict as they had not separated

or left the court room and their discharge had not been recorded. We think this was a proper ruling.

*Id.* at 419, 132 A.2d at 472.

In the instant case the jury had deliberated upon, and arrived at a permissible verdict of guilty on the charge of use of a handgun in the commission of a crime of violence. The jurors returned to the jury box prepared to announce their verdict on that charge, as well as their not guilty verdicts on the remaining charges. I see no logical reason for holding that they were precluded from rendering their guilty verdict on the handgun charge merely because they first announced and were polled on their not guilty verdicts on the other charges. Until the jury was discharged and dispersed, they should be able to return the verdict they had reached, but not yet announced.

Judges Rodowsky and McAuliffe have authorized me to state that they join in this dissenting opinion.