915 A.2d 432

**Lawrence PRICE, Jr.**

v.

**STATE of Maryland.**

**No. 983, Sept. Term, 2005.**

Court of Special Appeals of Maryland.

Jan. 25, 2007.

Michael R. Malloy (Nancy S. Forster, Public Defender, on brief), for appellant.

Gary E. O'Connor (J. Joseph Curran, Jr., Atty. Gen., on brief), for appellee.

Panel EYLER, JAMES R., SHARER and WOODWARD, JJ.

EYLER, JAMES R., J.

Lawrence Price, Jr., appellant, was convicted by a jury in the Circuit Court for Baltimore City of possession of heroin, possession of cocaine, possession of marijuana, and possession of a firearm under sufficient circumstances to constitute a nexus to a drug trafficking crime. The jury acquitted appellant of fourteen other related counts.[1] Subsequently, the court sentenced appellant to eight years imprisonment on the possession of heroin conviction, with a consecutive eight years imprisonment on the possession of cocaine conviction, two years imprisonment concurrent on the possession of marijuana conviction, and another twelve years imprisonment consecutive on the possession of a firearm conviction.

Appellant raises four questions for our consideration on appeal:

(1) Whether the evidence was sufficient to sustain appellant's convictions;

(2) Whether the court erred by refusing to ask an impaneled juror, who was later dismissed, whether he had discussed the reason for his dismissal with any of the other jurors;

(3) Whether the court erred by doubling appellant's sentences for all three drug possession convictions pursuant to

---

1. Appellant was acquitted of: (Count 1) possession with intent to distribute heroin; (Count 3) possession with intent to distribute cocaine; (Count 5) possession with intent to distribute marijuana; (Count 8) possession of a regulated firearm having been convicted of a prior disqualifying felony; (Count 9) wearing, carrying, or transporting a handgun; (Counts 10–12) conspiring to distribute heroin, to possess with intent to distribute heroin, and to possess heroin; (Counts 13–15) conspiring to distribute cocaine, to possess with intent to distribute cocaine, and to possess cocaine; and, (Counts 16–18) conspiring to distribute marijuana, to possess with intent to distribute marijuana, and to possess marijuana.

Maryland Code (2002 Repl.Vol.), § 5–905 of the Criminal Law ("C.L.") Article;

(4) Whether the court erred by allowing the jury to convict appellant of possession of a handgun in connection with drug trafficking, and acquit him of all other drug trafficking charges.

As to questions 1, 2, and 4, we affirm. As to question 3, we shall vacate the sentences and remand to circuit court for resentencing consistent with this opinion.

## Factual Background

Appellant was tried jointly with Damien Tucker ("Tucker"). The following is a summary of the evidence adduced at trial pertinent to this appeal.

Officer Richard Pollock of the Baltimore City Police Department, who was qualified as an expert in the identification, packaging, and sales of controlled dangerous substances, testified that on November 20, 2002, he and Sergeant William Harris were conducting surveillance in the 2300 block of Winchester Street in the Winchester Apartment community, an area where drugs are "commonly sold." Officer Pollock and Sergeant Harris were in an unmarked vehicle using binoculars to observe several individuals who were standing in the breezeway of an apartment building. Appellant and Tucker were later identified as two of the individuals standing in the breezeway. During surveillance, Officer Pollock observed at least fifteen people "drive into the area and park . . . walk up to the group [standing in the breezeway], and Mr. Tucker was seen receiving U.S. currency in bill form, and then a small object unknown at that time was handed to that person, which they would take and reenter their vehicles if they drove up and then leave the area." At some point, Officer Pollock and Sergeant Harris exited their vehicle and radioed for backup. When backup arrived in the area, Officer Pollock and Sergeant Harris began to approach the group. As they approached, Officer Pollock observed three or four people on the

landing between floors of the building. When those individuals saw the officers approaching, "everyone started running."

Officer Pollock observed two of the individuals, appellant and Tucker, run "up the stairs," and observed Tucker "dropping an item which [Officer Pollock] recovered [and] which was [he] believe[d] a blue ziplock, small ziplock bag containing a brown substance of suspected heroin." Officer Pollock followed appellant and Tucker to the third floor, but before he could reach them, they had entered an apartment and shut and locked the door. Officer Pollock could see underneath the door and observed "people running all throughout the apartment."

While Officer Pollock waited outside of the apartment, one of the backup officers who had arrived at the scene, Sergeant Dorsey McVicker, retrieved a key to the apartment from the rental office. When the officers opened the apartment door, Officer Pollock observed "three gentlemen inside the apartment. They ran towards the back bedroom. . . . [and][o]ne of those persons jumped out of the third floor window and ran off down the apartment parking lot." Detective David Schuster, the second backup officer who had arrived at the scene, apprehended Tucker, and Officer Pollock apprehended appellant, "who threw a brown bag to the ground, and that contained a handgun and U.S. currency."

On cross-examination, Officer Pollock testified that,

[i]n [the Winchester Apartment] area, there's a constant flow sometimes where there may be four or five people and then other people come up and they're communicating and talking with others even while sales are going on, but that doesn't necessarily mean that they're involved in the actual sales. They're just there in the area as it goes on, as was the case that I thought with [appellant].

He also acknowledged that in his surveillance, he did not see appellant receive currency, distribute anything that looked like narcotics, or do anything that resembled drug dealing. He stated again, however, that when he entered the apartment and started chasing after the three men, he saw appellant

throw a bag which was recovered and found to have a handgun and a large amount of U.S. currency in it.

Detective Schuster, qualified as an expert in the identification, packaging, and street level sale of controlled dangerous substances, testified that he grabbed Tucker as he was trying to escape through the window. As Detective Schuster was pulling Tucker off of the window ledge, Tucker threw a brown bag into the corner of the room. Later, Detective Schuster recovered the brown bag, which contained "numerous amounts of suspected CDS," including "numerous gelatin capsules [and] a white powder substance which [he] believed to be heroine [sic]." Detective Schuster stated that the amount and packaging of the drugs indicated that they were intended for sale. He also stated that based on "[t]he fact that [the handgun] was less than five feet away [from] the amount of drugs that we recovered based on [Detective Schuster's] experience it indicates a level—it indicates an intent to protect the [drug] operations they had going on."

After the jury was sworn, the court instructed them "not to discuss the case ... amongst yourselves....," and "not to discuss the case with anyone or let anyone discuss it with you. That includes other jurors...." The court also instructed the jurors that if "anything questionable occurs ..., write it down on a piece of paper and we'll address it appropriately." At the conclusion of testimony on the first day of trial, January 24, 2005, the court instructed the jury to "please not discuss this case with anyone by and amongst yourselves or with anyone else." After the jury was excused for the day, the following transpired.

THE COURT: Okay. Fair enough. Any other preliminary matters that we can address? There is one and it's significant, and I want to raise it to you. I did receive a note from juror number four at 4 o'clock. It was supplied to my court clerk during a very short five-minute recess.

It says as follows: I live three and a half blocks away from the apartments. I don't want any decision I make to put my family in danger. I drive past every day when I go to

work. That's the note that the court received in connection with these proceedings.

\* \* \*

I'll ask the [S]tate how it wishes the court to proceed in light of this note.

THE STATE: My problem is two-fold, Your Honor. First, if the defendant—if the juror is not going to make a decision based on the evidence based on fear, then that scares the [S]tate because not knowing anything about the defendants if the witness (sic) says I can't find these guys guilty because I'm scared of what's going to—any reprises, that's a juror that's already (inaudible), and as far as—and I'm going to make a defense argument.

It's clear he already has a preconceived notion about these defendants, that they're the type of people who would do this. I think both sides—

THE COURT: Well, just speak for your side, sir, at this point.

THE STATE: Okay. Then like I said, Your Honor, if he's scared to make a decision he's clearly biased against the [S]tate.

THE COURT: I'll be happy to hear from both defense counsel.

APPELLANT'S COUNSEL: May I see the note, Your Honor?

THE COURT: Sir, I actually just read the note the exact way it is. Tell me why you want to see it.

APPELLANT'S COUNSEL: Just to see how it's written, Your Honor. I'm not doubting the court. However, I believe the case law is pretty clear that if I request to see it it's the court's obligation to allow me to.

THE COURT: Let the record show that I'm showing it to you.

APPELLANT'S COUNSEL: Thank you, Your Honor. My only—I'll submit, Your Honor.

THE COURT: Okay. [Tucker's counsel], your position?

TUCKER'S COUNSEL: Your Honor, I'd ask that the juror be stricken and the alternate be seated.

THE COURT: And that's consistent with what you're asking for, [State]?

THE STATE: Yes.

THE COURT: Okay. What I'd like to do is take it up tomorrow morning. That's why I waited until this point in the proceedings. When I received the note at 4:00, let the record reflect that it's 4:45, I'm inclined to do just that, just that being striking juror number four and seating the alternate in place of juror number four, but I would like to reserve on the issue until tomorrow.

THE STATE: Thank you.

THE COURT: And we'll address the proceeding tomorrow morning after we have all jurors present.

APPELLANT'S COUNSEL: Okay. Your Honor, there's one additional thing.

THE COURT: Sure.

APPELLANT'S COUNSEL: I would ask that an inquiry be made whether this juror has spoken with any of the other jurors regarding the neighborhood, if he has this sort of knowledge that he's in fear that there will be reprisals.

THE COURT: I've made it clear. I've said three times not to discuss this matter by and amongst yourselves. If anyone—I can't say it anymore times than that.

APPELLANT'S COUNSEL: I know, Your Honor.

THE COURT: I am not inclined to do that at this time, but I'll hold it under advisement and we can address it tomorrow.

The next morning, the following transpired.

THE COURT: Are there any preliminary matters before we call for the jury?

THE STATE: Your Honor, the—oh.

APPELLANT'S COUNSEL: Your Honor. . . . The one issue of the juror that sent the note yesterday.

THE COURT: And I was going to take that up with you. I'll be happy to address it now, and as I understand it there's a[sic] agreement between counsel to dismiss juror number four and to replace that juror with alternate number one.

Is that correct, [State]?

THE STATE: That is the State's position.

THE COURT: Is that correct, [Tucker's counsel]?

TUCKER'S COUNSEL: On behalf of Mr. Tucker that is our request, Your Honor.

THE COURT: And on behalf of [appellant]?

APPELLANT'S COUNSEL: Yes, Your Honor. Yesterday submitted to the court. I will again submit to the court's judgment on that issue. I did make a request of the court yesterday to inquire as to whether you'd discuss as to whether he'd discussed the neighborhood with the other jurors. The court denied that request just so that the record is clear.

THE COURT: Right. I don't believe that was appropriate. I asked and I've advised the jury at every recess not to speak to anyone, so I don't believe it's necessary to address that with the juror. I'm not going to dismiss and seat the alternate unless there's an agreement between all sides.

* * *

Following this exchange, appellant's counsel agreed to have the juror dismissed. The court then advised the juror that he was being excused, stating:

Let me be very clear about one thing. Sir, you are not to have any contact with anyone, not to discuss this case with anyone, your members of your veneer panel or anything. Please do not tell them why you were excused or discuss anything about the case, and at 12:30 you can be paid in Room 239 of this courthouse.

At the conclusion of the evidence, the court instructed the jury, in pertinent part, as follows.

Ladies and gentlemen, the defendants are charged with the crime of possessing a firearm during and in relation to drug trafficking crimes. Possession with the intent to distribute heroin, cocaine and marijuana, conspiracy to distribute heroin, cocaine and marijuana, and conspiracy to possess with the intent to distribute heroin, cocaine and marijuana are drug trafficking crimes.

You may not consider the crime of possessing a firearm during and in relation to a drug trafficking crime unless you found the defendant guilty of possession with the intent to distribute heroin, cocaine and/or marijuana, conspiracy to distribute heroin, cocaine and/or marijuana, or conspiracy to possess with the intent of distributing heroin, cocaine and/or marijuana.

If your verdict on those charges is not guilty you must find the defendant not guilty of possession of a firearm in the commission of a drug trafficking crime. In order to convict the defendant the [S]tate must prove, one, that the defendants committed the crime of possession with the intent to distribute heroin, cocaine and/or marijuana, conspiracy to distribute heroin, cocaine [and/or] marijuana, and/or conspiracy to possess with the intent to distribute heroin, cocaine and/or marijuana; two, that the defendants possessed a firearm during and in relation to the crime; and three, that there was a connection between the defendant's possession of the firearm and the crime.

Ultimately, appellant was convicted of possession of a firearm under sufficient circumstances to constitute a nexus to a drug trafficking crime, although he was acquitted of possession with the intent to distribute heroin, cocaine and/or marijuana, conspiracy to distribute heroin, cocaine and/or marijuana, or conspiracy to possess with the intent of distributing heroin, cocaine and/or marijuana in contravention of the court's instructions.

On April 6, 2005, a sentencing hearing was held. At that hearing, the following ensued.

APPELLANT'S COUNSEL: Thank you, Your Honor. I'll begin with the drug trafficking—handgun in the commission of drug trafficking because there is a legal argument, Your Honor.

\* \* \*

APPELLANT'S COUNSEL: As referenced to the proceedings shown as the court went through, [appellant] was found guilty of three misdemeanor possessions.

THE COURT: Found guilty of possession of heroin, possession of cocaine, and possession of marijuana. He was found not guilty of the underlying felonies or the felonies.

APPELLANT'S COUNSEL: Yes.

THE COURT: Possession with the intent to distribute heroin, possession with the intent to distribute cocaine, and possession with the intent to distribute marijuana.

APPELLANT'S COUNSEL: And found not guilty to the conspiracies.

THE COURT: Correct.

APPELLANT'S COUNSEL: If you were charged with use of a handgun in the commission of a crime of violence there's a case, Halford [2] (phonetic), which I gave the cite to your law clerk this morning.

\* \* \*

APPELLANT'S COUNSEL: If someone is charged with use of a handgun in the commission of a crime of violence and they are found not guilty of the crime of violence that is an essential element to the underlying crime of use of the handgun in the commission of a crime of violence.

What [Hoffert] says is that given that verdict the court may not sentence, the court must strike the finding because the underlying element of that crime has not been met by—the jury hasn't found the underlying element. I understand that in many instances that juries are allowed to have

---

2. The correct cite is to *Hoffert v. State,* 319 Md. 377, 572 A.2d 536 (1990).

inconsistent verdicts except under where circumstances where it is an element of the trial.

THE COURT: So the argument, as I understand it, is it's an inconsistent verdict for the jury to have found [appellant] convicted of the possession of a firearm under indictment 077 if they, in fact, acquitted him of the felony in the indictment ending in 075.

APPELLANT'S COUNSEL: That's correct, and that inconsistency becomes fatal. A drug trafficking crime according to the statute means a felony or conspiracy to commit a felony involving controlled dangerous substance. There is—the verdict itself is fatally inconsistent.

It has not met the elements to allow the court to proceed to sentence [appellant] under that handgun because they're just not there. Had they found him guilty of a felony, had they found him guilty of a conspiracy there would be a sufficient basis, but based on the fact it's not there the court lacks the ability to sentence under that.

* * *

APPELLANT'S COUNSEL: [*Hoffert*] deals directly with use of a handgun in the commission of a crime of violence. I could find no case law for the drug trafficking charge. However, the language is consistent and it discusses in 5–621 use of a weapon as a separate crime where it goes through the conspiracy and what has to be shown.

The drug trafficking has to be the felony or the conspiracy to commit a felony, so based on that I believe the court lacks the jurisdiction to sentence and that verdict has to be stricken and we just proceed on the three misdemeanors, the possession of cocaine, the possession of heroin, possession of marijuana. . . .

* * *

THE COURT: Here's what the court is going to do. . . . The court is going to require the following: I will set this matter in for . . . May 5. I will entertain the sentencing at that time on May 5.

> Prior to that, [appellant], you will submit a memoranda in writing to the court . . . outlining the legal position that you espouse. Thereafter, [the State], you will file a responsive memoranda. . . .

On June 14, 2005, a second sentencing hearing was held. Before sentencing appellant, the court ruled on appellant's motion to reverse his conviction on the possession of a firearm under sufficient circumstances to constitute a nexus to drug trafficking count. The court denied the motion, stating:

> In light of the fact that the [appellant] was acquitted of all of the underlying felony drug counts and related conspiracy counts. It was argued by the Defense that the verdict must be vacated because it is inconsistent with the other verdicts. . . .
>
> \* \* \*
>
> I've reviewed both documents submitted by the defense and the State as well as the case relied upon by both parties. Respectfully, none of the cases are directly on point as I think both parties acknowledged. The argument presented by the defense does not account for the special role of the jury in our judicial system. And the regard to which their decisions must be respected.
>
> One of the cases cited by the defense, *[Hoffert] v. State*, which the [c]ourt has reviewed at 319 Md. 377, 572 A.2d 536, the Court of Appeals noted that inconsistent verdicts are often tolerated. The Court in *[Hoffert]* noted that "Due to the singular role of the jury in the criminal justice system, there is a reluctance to interfere with the results of unknown jury interplay at least without proof of an actual irregularity."
>
> The general law is that inconsistencies may be the product of lenity, mistake or compromise to reach unanimity and that continual correction of such matters would undermine the historic role of the jury as the arbiter of questions put to it. And that's a quote directly from that case.
>
> The [c]ourt further notes that in *State v. Johnson*, 367 Md. 418, 788 A.2d 628, Judge Battaglia wrote for the Court in

the context of two inconsistent verdicts for two codefendants that different trials commonly lead to different results. We necessarily consent to these consequences by our common acceptance of the jury's system. The Court goes on to say, "A symmetry of results while ideal is not necessary to ensure the attainment of justice." The [c]ourt does find that reasoning most persuasive.

As [appellant's counsel] noted, the issue has not been squarely addressed in the Maryland courts. The [c]ourt has noted that other jurisdictions have addressed it. In two cases, which the [c]ourt has been able to unearth first, the *United States v. Figueroa–Encarnacion*, 343 F.3d 23, United-ed States Court of Appeals for the First Circuit, affirmed a conviction of the Defendant for possession of a weapon in furtherance of a drug trafficking crime in conjunction with an acquittal of an underlying drug possession crime.

And in the *United States v. Ramos–Rodriguez*, 136 F.3d 465, the United States Court of Appeals for the Fifth Circuit held that a conviction for carrying a firearm during and in relation to a drug trafficking crime does not require a conviction for an underlying drug offense.

The Court further held that an acquittal of a predicate offense does not preclude conviction when there's ample evidence demonstrating that a reasonable jury could have found the Defendant guilty of a predicate offense. Here there is ample evidence demonstrating that a reasonable jury could have found the Defendant guilty of the predicate offense.

The [c]ourt finds that the holdings of these other jurisdictions and as well the reasoning by the Court of Appeals is constant with the persuasive authority presented. The [c]ourt finds that that authority is more compelling than what has been presented as the defense counsel's interpretation of the law.

As a result this [c]ourt will deny [appellant's] motion to strike the jury's finding of guilt in count seven, possession of a firearm, under sufficient circumstances to constitute a

nexus to drug trafficking for the reason stated here on the record this morning.

\* \* \*

Thereafter, the court sentenced appellant, as described above.

## Discussion

### *Sufficiency of the Evidence*

Appellant first contends that the evidence was insufficient to sustain his convictions for possession of heroin, cocaine, and marijuana, and for possession of a firearm in connection with drug trafficking.[3] In support of this contention, appellant argues that there was no evidence that he was in actual or exclusive possession of the drugs, or that he was in any way connected to Tucker, or that the bag containing money and a gun was in any way connected to the sale of drugs.

The standard for reviewing the sufficiency of the evidence is "whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 313, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *see State v. Smith,* 374 Md. 527, 533, 823 A.2d 664 (2003). We give "due regard to the [fact finder's] findings of facts, its resolution of conflicting evidence, and significantly, its opportunity to observe and assess the credibility of witnesses." *Harrison v. State,* 382 Md. 477, 488, 855 A.2d 1220 (2004) (*citing Mc-Donald v. State,* 347 Md. 452, 474, 701 A.2d 675 (1997)), *cert. denied,* 522 U.S. 1151, 118 S.Ct. 1173, 140 L.Ed.2d 182 (1998) (*quoting State v. Albrecht,* 336 Md. 475, 478, 649 A.2d 336 (1994)). "We do not measure the weight of the evidence; rather we concern ourselves only with whether the verdict was supported with sufficient evidence, direct or circumstantial,

---

**3.** We shall address appellant's contention regarding possession of a firearm in connection with drug trafficking *infra* under the heading "Inconsistent Verdict."

which could fairly convince a trier of fact of the defendant's guilt of the offenses charged beyond a reasonable doubt." *McDonald,* 347 Md. at 474, 701 A.2d 675 (*citing Albrecht,* 336 Md. at 478–79, 649 A.2d 336).

Appellant was charged with possession of heroin, cocaine, and marijuana pursuant to Maryland Code (2002 Repl.Vol.), § 5–601 of the Criminal Law Article ("C.L."). That section provides that a person may not "possess" a controlled dangerous substance. Possession is defined in C.L. § 5–101(u) as "to exercise actual or constructive dominion or control over a thing by one or more persons." Possession may be constructive, or may be joint. *State v. Leach,* 296 Md. 591, 596, 463 A.2d 872 (1983) (*citing Henson v. State,* 236 Md. 518, 204 A.2d 516 (1964); *Garrison v. State,* 272 Md. 123, 321 A.2d 767 (1974); *Rucker v. State,* 196 Md. 334, 76 A.2d 572 (1950)). To support a conviction for the offense of simple possession, the "evidence must show directly or support a rational inference that the accused did in fact exercise some dominion or control over the prohibited . . . drug in the sense contemplated by the statute, i.e., that [the accused] exercised some restraining or directing influence over it." *Garrison,* 272 Md. at 142, 321 A.2d 767. Additionally, "[t]he accused, in order to be found guilty, must know of both the presence and the general character or illicit nature of the substance. Of course, such knowledge may be proven by circumstantial evidence and by inferences drawn therefrom." *Dawkins v. State,* 313 Md. 638, 651, 547 A.2d 1041 (1988).

■ The following factors are relevant to determining the issue of possession:

1) proximity between the defendant and the contraband, 2) the fact that the contraband was within the view or otherwise within the knowledge of the defendant, 3) ownership or some possessory right in the premises or the automobile in which the contraband is found, or 4) the presence of circumstances from which a reasonable inference could be drawn that the defendant was participating with others in the mutual use and enjoyment of the contraband.

*Larocca v. State,* 164 Md.App. 460, 473, 883 A.2d 986 (2005) (*citing Folk v. State,* 11 Md.App. 508, 518, 275 A.2d 184 (1971); *Hall v. State,* 119 Md.App. 377, 394, 705 A.2d 50 (1998)).

■ The evidence adduced at trial consisted mainly of the testimony of the police officers who were conducting surveillance at the Winchester Apartments on November 20, 2002. Officer Pollock, who was qualified as an expert in the identification, packaging, and sales of narcotics, testified that drugs are commonly sold in the area. He stated that he observed several people standing in the breezeway, one of whom was appellant. Officer Pollock observed at least fifteen people drive into the area, approach the group, exchange money for an object, and leave the area. When the officers approached the group, they started running. Appellant and Tucker ran upstairs, and Tucker dropped a small bag of suspected heroin. When Officer Pollock apprehended appellant in the apartment, appellant threw a bag containing a large sum of money and a handgun to the ground.

Detective Schuster, who was also qualified as an expert in the identification, packaging, and sale of narcotics, testified that when he apprehended Tucker, appellant's co-defendant, Tucker threw a bag containing a large amount of CDS packaged for sale.

From this testimony, the jury could have reasonably concluded that appellant was in close proximity to the drugs and had knowledge of the presence of the drugs. Furthermore, the jury could have reasonably inferred that appellant was participating in the sale of the drugs, and that the gun and money thrown by appellant were instruments related to the sale of drugs. In addition, the jury could have concluded that appellant was in possession of the gun that was recovered from the bag that Officer Pollock saw appellant throw to the ground. Thus, the evidence was sufficient to support appellant's possession convictions.

### Dismissed Juror

■ Appellant next contends that the court erred in not asking the dismissed juror whether he had discussed the

neighborhood and his fear of reprisals with the other jurors. Citing no authority on point, appellant argues that "[t]he need to ask the question ... was analogous to the necessity that voir dire inquiries be made during jury selection with the purpose of identifying and removing venire panel members who are subject to elimination for cause." Like voir dire, appellant argues, "a trial judge has a duty to inquire, during the trial, when a juror reveals potential bias on the jury against the defendant." The State counters that the court properly exercised its discretion not to ask further questions of the juror, and in any event, this Court should presume that the juror followed the court's repeated instructions not to discuss the case with anyone else, including the other jurors.

■ The general rule in Maryland is that the trial judge has wide discretion in the conduct of a trial and that the exercise of that discretion will not be disturbed unless it has been clearly abused. *State v. Hawkins*, 326 Md. 270, 277, 604 A.2d 489 (1992) (*citing Crawford v. State*, 285 Md. 431, 451, 404 A.2d 244 (1979)). We can find nothing in our review of the record that would lead us to conclude that the court abused its discretion in dismissing Juror number four without inquiring further whether he had discussed his knowledge of the neighborhood and his fear of retribution.

Upon receiving the note, the court properly discussed with counsel whether they wished to excuse the juror and replace him with an alternate. The court, noting that it, on several occasions, had admonished the jurors not to discuss the case, did not find it necessary to inquire further of the dismissed juror whether the juror had discussed with anyone his reasons for wanting to be dismissed. Under these circumstances, in the absence of any reason to believe the juror did not follow instructions, there was no requirement that the court inquire further. We perceive no abuse of discretion.

### Doubled Sentences

■ Appellant next contends that, pursuant to C.L. § 5–601, the maximum sentence he could have received on the

heroin and cocaine possession convictions was four years for each, and the maximum sentence on the marijuana conviction was one year.[4] Instead, the court, at the request of the State, sentenced appellant to eight years imprisonment on each of the heroin and cocaine convictions, and two years imprisonment on the marijuana conviction.

The State contends that C.L. § 5–905 authorized the court to double appellant's sentences because of his status as a repeat offender,[5] and that the plain language, legislative history, and case law support this conclusion.

Appellant counters that pursuant to § 5–905(d), doubling of sentences is "explicitly limited" to "one count only." Appellant suggests that § 5–905(d) codified[6] this Court's ruling in *Diaz v. State*, 129 Md.App. 51, 740 A.2d 81 (1999), *cert. denied*, 357 Md. 482, 745 A.2d 436 (2000)(interpreting Article 27, § 293, the predecessor to § 5–905).

For the reasons that follow, we shall conclude that the language of § 5–905(d) is ambiguous; therefore, applying the principles of *Diaz*, the rule of lenity requires that we vacate the sentences.

Senate Bill 345 was enacted in 2000 in response to two Court of Appeals rulings—*Gardner v. State*, 344 Md. 642, 689

---

**4.** C.L. § 5–601 provides, in part,

(a) *In general.*—Except as otherwise provided in this title, a person may not;

(1) possess or administer to another a controlled dangerous substance. . . .
\* \* \*

(c) *Penalty.*—(1) Except as provided in paragraph (2) of this subsection, a person who violates this section is guilty of a misdemeanor and on conviction is subject to imprisonment not exceeding 4 years or a fine not exceeding $25,000 or both.

(2) A person whose violation of this section involves the use or possession of marijuana is subject to imprisonment not exceeding 1 year or a fine not exceeding $1,000 or both.

**5.** Appellant was previously convicted of possession with intent to distribute CDS.

**6.** In fact, *Diaz* was decided before § 5–905(d) was enacted.

A.2d 610 (1997) and *Scott v. State,* 351 Md. 667, 720 A.2d 291 (1998). Senate Judiciary Committee, Bill Analysis, Senate Bill 345 (2000). In *Gardner,* the issue was "whether a sentence on a single count of an indictment or information may be enhanced pursuant to both Maryland Code (1957, 1992 Replacement Volume) Article 27, § 286(c) and § 293." 344 Md. at 644, 689 A.2d 610. Importantly, Article 27, § 286(c) provided for a mandatory minimum sentence of 10 years imprisonment for a repeat offender.

Gardner, a repeat offender, was convicted of possession of heroin and possession of heroin with intent to distribute. Subsequently, he was sentenced for the possession with intent to distribute count to an enhanced sentence of 25 years imprisonment pursuant to § 293, with a mandatory minimum sentence of 10 years, pursuant to § 286(c). In other words, § 286(c) enhanced Gardner's sentence by requiring a mandatory minimum of 10 years and § 293 further enhanced the sentence by doubling the maximum imprisonment that Gardner could have received on the charge. On appeal, Gardner argued that a single count could not be enhanced under both §§ 286(c) and 293.

The Court of Appeals reversed this Court's decision in *Gardner v. State,* 105 Md.App. 796 (1995), and held that the legislative intent concerning the application of both sections of Article 27 to enhance penalties of a single count or charge was ambiguous.

Similarly, in *Scott,* the issue presented was "whether, when what is possessed is '50 grams or more of cocaine base, commonly known as "crack," ', § 286(f)(1)(iii), the sentence prescribed by Maryland Code (1957, 1996 Repl.Vol.) Article 27, § 286 [7] (b)(1), for possession with intent to distribute cocaine as proscribed in Article 27, § 286(a)(1), may be enhanced, by both § 286(f)(3) and § 293." 351 Md. at 668, 720 A.2d 291. As in *Gardner,* Scott was sentenced under both

---

[7]. Article 27, § 286 was recodified under sections 5–602 through 5–609, 5–612, and 5–613 of the Criminal Law Article.

Article 27, § 293, and under Article 27, § 286(f), which section did not apply to a subsequent offender, but rather prescribed a mandatory minimum sentence when a defendant is convicted of possessing more than 50 grams of crack cocaine. The Court of Appeals, reversing this Court's decision in *Scott v. State*, 117 Md.App. 754 (1997), finding the statutes ambiguous, applied the rule of lenity, stating:

> The Court of Special Appeals interpreted the *Gardner* decision as prohibiting the enhancement of a sentence on a single count twice under two subsequent offender statutes or provisions, arguing, by way of contrast, that "[t]he court here enhanced [the petitioner's] sentence as a subsequent offender only after the State proved that [the petitioner] possessed more than fifty grams of [crack] cocaine with the intent to distribute it."
>
> * * *
>
> Indeed, although, in this case, we address a different subsection of § 286, the question to be answered is the same, namely, whether the Legislature intended that sentences already enhanced pursuant to a subsection other than subsection (g), be further enhanced by § 293. The answer in this case, as in *Gardner*, is simply not clear; considering, the applicable statutes in context leaves a doubt as to whether both were intended to be applied to a single count of an indictment or information simultaneously.

351 Md. at 676, 720 A.2d 291.

In response to these decisions, and because of the perceived ambiguity, the legislature clarified its intent by adding what is now § 5–905(d).[8] C.L. § 5–905, formerly Md.Code, Art. 27, § 293,[9] entitled "Repeat offenders," provides, in part,

---

**8.** Originally enacted as Article 27, § 293(d) in 2000 and renumbered without substantive change in 2002 to § 5–905(d).

**9.** Article 27, § 293 provided, in pertinent part

(a) *More severe sentence.*—Any person convicted of any offense under this subheading is, if the offense is a second or subsequent offense, punishable by a term of imprisonment twice that otherwise authorized

(a) *In general.*—A person convicted of a subsequent crime under this title is subject to:

(1) a term of imprisonment twice that otherwise authorized;

(2) twice the fine otherwise authorized;  or

(3) both.

\* \* \*

(d) *Sentencing in conjunction with other sentences.*—*A sentence on a single count under this section may be imposed in conjunction with other sentences under this title.*

(emphasis added).

The legislative history of subsection (d) indicates that the legislature's intent was to "clearly apply[ ] the enhanced penalty under Article 27, § 293 to any controlled dangerous substance offense, including a sentence that imposes a mandatory minimum sentence."  Senate Judiciary Committee, Bill Analysis, Senate Bill 345 (2000).  In other words, the bill provided "that a sentence under Article 27, § 293 may be imposed in conjunction with other sentences, including those with a mandatory minimum sentence." *Id.*

As stated previously, both Gardner and Scott were penalized under Article 27, § 293, which provided for an enhanced sentence for repeat offenders, and under another statute that provided for a mandatory minimum sentence.  That is not the situation here;  thus, the legislative history does not answer the question before us—whether § 5–905(d) is meant to apply to situations in which a defendant's sentence is enhanced on each of three counts arising from a single course of conduct, or

----

. . . .
(b) *Second or subsequent offense defined.*—For purposes of this section, an offense shall be considered a second or subsequent offense, if, prior to the conviction of the offense, the offender has at any time been convicted of any offense or offenses under this subheading or under any prior law of this State or any law of the United States or of any other state relating to the other controlled dangerous substances as defined in this subheading.

whether a defendant's sentence can be enhanced only on one count arising out of a single course of conduct.

Although decided shortly before the enactment of § 5–905(d), a similar question arose in *Diaz v. State;* thus, we shall turn to that decision for guidance.

In *Diaz,* the appellant was convicted of Count 1, possession of heroin with intent to distribute; Count 3, possession of cocaine with intent to distribute; Count 5, use or transport of a handgun in a drug trafficking offense (heroin); Count 8, use or transport of a handgun in a drug trafficking offense (cocaine); Count 9, maintaining a common nuisance (heroin) in a vehicle; Count 10, maintaining a common nuisance (cocaine) in a vehicle; and of altering the serial number of a handgun. The appellant was subsequently sentenced to 20 years for Count 1, increased to 40 years pursuant to § 293; 20 years for Count 3, increased to 40 years pursuant to § 293; a consecutive 20 years for Count 5 (merged with Count 8); a consecutive 20 years for Count 9 (merged with Count 10), increased to 40 years pursuant to § 293; and 3 years for the alteration of the serial number, consecutive, the first five years to be served without parole pursuant to Count 5, for a total of 143 years. 129 Md.App. at 55–56, 740 A.2d 81. The issue on appeal was whether the court erred in applying the sentencing enhancement of § 293 [10] to double three separate counts from 60 years to 120 years. *Id.* at 57, 740 A.2d 81. The appellant argued that the Legislature did not intend that the sentence for each and every count of the conviction be doubled but, rather, that the sentence for only one of the counts be doubled. *Id.* at 80, 740 A.2d 81. We agreed, and vacated appellant's sentences.

In reversing Diaz's convictions, we concluded that § 293 was "unambiguous given a straightforward application in a case involving a single count indictment, but, when the court is faced with a multi-count indictment, i.e., when multiple infractions springing from a single course of conduct are tried

---

**10.** *See supra,* n. 9.

together, the picture becomes obfuscated." *Id.* at 81, 740 A.2d 81. Recognizing that our goal in analyzing a statute is to avoid "giving the statute a strained interpretation or one that reaches an absurd result," *Id.* at 80, 740 A.2d 81 (*citing Richmond v. State,* 326 Md. 257, 262, 604 A.2d 483 (1992)), such as a sentence "enhanced" to 143 years, we applied the rule of lenity, which requires that ambiguous penal statutes be strictly construed against the State and in favor of the defendant. *Scott,* 351 Md. at 675, 720 A.2d 291. In applying the rule, we concluded that

the language of the statute [11] speaks in the singular of an enhancement for a particular "offense" which implies a single criminal drama, not the enhancement of each of the individual scenes as set forth in the particular counts of the indictment. The notice of increased penalty also speaks of a singular enhancement for an "offense," rather than multiple "offenses," which implies the same. The language, therefore, is at least ambiguous as to whether the legislature contemplated not one but three enhancements in the same proceeding against a defendant. Ambiguous language may defeat a penalty enhancement, because "an enhanced penalty may not be imposed unless that is clearly the intent of the Legislature." *Gardner,* 344 Md. at 647, 689 A.2d 610. Here, none has been expressed. Thus, this Court cannot affirm multiple enhancements.

*Diaz,* 129 Md.App. at 83, 740 A.2d 81.

Notably, although decided before the enactment of § 5–905(d), the Legislature made no mention of *Diaz* anywhere in its bill analyses. Thus, the legislative history is not helpful. We hold that the language of the statute is ambiguous in that it does not make clear whether an enhanced penalty can be imposed on each and every count arising out of a single course of conduct, or criminal drama, as we labeled it in *Diaz,* or whether an enhanced penalty can only be imposed on one count of a multi-count charging document based on a single

___

11. *See supra,* n. 9.

course of conduct.   Thus, as in *Diaz,* the rule of lenity applies, and we must vacate appellant's sentences.

## *Inconsistent Verdict*

Appellant next contends that the court erred in refusing to vacate the conviction for possession of a firearm with a nexus to drug trafficking because the conviction was inconsistent with the not guilty verdicts on the underlying drug trafficking counts, i.e., possession with intent to distribute CDS, conspiracy to distribute CDS, or conspiracy to possess with intent to distribute CDS. The State, while acknowledging that the verdicts are inconsistent, counters that because the "inconsistent verdicts were not due to any error in jury instructions, the inconsistent verdicts should be tolerated on appeal."

We note that although unexplained inconsistent verdicts rendered by a trial judge cannot stand, inconsistent verdicts in a jury trial are generally tolerated under Maryland law.   *Stuckey v. State,* 141 Md.App. 143, 157, 784 A.2d 652 (2001), *cert. denied,* 368 Md. 241, 792 A.2d 1178 (2002); *see Hudson v. State,* 152 Md.App. 488, 832 A.2d 834 (2003) ("Consistency has never been a requisite attribute of a jury verdict.").   In fact, "to reverse an inconsistent conviction would not only require guesswork about what produced the inconsistency, but would also be unfair to the State, which cannot appeal an inconsistent acquittal." *Id.* at 513, 832 A.2d 834. At the appellate level, this Court will review such inconsistent verdicts "where real prejudice is shown and the verdicts may be attributable to errors in the jury charge." *Stuckey,* 141 Md.App. at 157, n. 3, 784 A.2d 652 (*quoting Bates v. State,* 127 Md.App. 678, 699–700, 736 A.2d 407 (1999)).   That is not the situation before us.

Appellant argues that, "[i]n the instant case, the [c]ourt correctly and emphatically instructed the jury that they could not convict [a]ppellant of possession of a firearm with a nexus to drug trafficking if they did not find him guilty of one of the drug trafficking offenses with which he was charged."   Never-

theless, as stated previously, the jury, without finding appellant guilty of one of the drug trafficking offenses, found him guilty of possession of a firearm with a nexus to drug trafficking. Appellant concedes that the court's instructions were correct. Thus, we shall not disturb the jury's verdict.

We shall briefly address appellant's contention that *Hoffert* provides an exception "to the practice of tolerating inconsistent jury verdicts," and that we should recognize such an exception here.

In *Hoffert*, the jury was given a verdict sheet listing four charges: (1) attempted murder in the first degree, (2) attempted murder in the second degree, (3) robbery with a deadly weapon, and (4) use of a handgun in the commission of a crime of violence. Both during jury instructions and again before deliberations began, the judge admonished the jury that they could not find the appellant guilty of use of a handgun in the commission of a crime of violence unless they found him guilty of the underlying crime of violence, either attempted murder in the first or second degree or robbery with a deadly weapon.

The jury returned verdicts of not guilty on the charges of attempted first degree murder, attempted second degree murder, and robbery with a deadly weapon. Subsequently, the jurors were polled, indicating unanimous verdicts. Following the polling of the jury, the court began to address the jury, stating "having received your verdicts in this case is now complete...." 319 Md. at 381, 572 A.2d 536. While addressing the jury, the judge was interrupted by a juror, who called his attention to the fourth charge on the verdict sheet, the use of a handgun in the commission of a crime of violence. On notice, the judge then asked the foreman for the jury's verdict on that charge, to which the foreman replied "guilty." After a brief recess, the jury was recalled, and the court polled the jury as to the use of a handgun in the commission of a crime of violence charge. The judge asked each juror if his verdict was "guilty," and received an affirmative reply from all, and the jury was excused.

During the disposition proceedings, the judge indicated that the "verdict was allowed to stand because it was permitted by Maryland law." *Id.* at 383, 572 A.2d 536. The Court of Appeals, although recognizing that inconsistent verdicts are normally tolerated, reversed the judgment, holding the following.

When the jury was polled on the verdicts of not guilty on the first three charges ... and the poll disclosed that the verdicts were unanimous, the verdicts were final. The verdicts were legally proper. They were not contrary to the law and, without more, were in full accord with the judge's instructions which properly reflected the law. ... The verdicts stood complete without a verdict on the handgun charge. The guilt stage of the trial was over at that point. The jury had no further function to perform. It had exhausted its power and authority and could not be called upon to exercise additional duties in the case. In short, the case was no longer within the province of the jury. In the circumstances, the State was not entitled to a verdict on the handgun charge. It follows that the judge erred in permitting the jury to return a verdict on the fourth count. It was not a matter of the exercise of judicial discretion. The judge had no discretion to exercise because the verdict on the fourth charge was null and void and of no effect whatsoever. It certainly could not serve as the basis for the imposition of punishment and the entry of a judgment.

*Id.* at 386–87, 572 A.2d 536 (internal citations omitted).

Contrary to appellant's contention, *Hoffert* is not applicable here. The holding in *Hoffert* rested on the fact that the jury could not render a verdict on the fourth count once the guilt stage of the trial concluded. That is not the situation before us.

In light of our conclusion with respect to the enhanced penalty issue, we shall vacate the sentences and remand to circuit court for resentencing consistent with this opinion.

**SENTENCES VACATED. CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR FUR-**

THER PROCEEDINGS CONSISTENT WITH THIS OPIN-
ION. JUDGMENTS OTHERWISE AFFIRMED. COSTS
TO BE PAID TWO–THIRDS BY APPELLANT AND
ONE–THIRD BY MAYOR AND CITY COUNCIL OF BAL-
TIMORE CITY.